

7 Times Square
21st Floor
New York, NY 10036
T: 908-722-0700
F: 908-722-0755

*Direct Dial: 908-252-4208*
*Email: naduston@norris-law.com*

October 8, 2021

**Via ECF**

Judge Ann Donnelly
United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:    Santander Consumer USA, Inc. v. County of Nassau** *et. al.*
**Dkt. No. 20-cv-04790 (AMD)(SIL)**

Dear Judge Donnelly:

This firm represents Santander Consumer USA, Inc. ("Santander") and I write pursuant to Your Honor's Individual Practices, Rule 4(A) and 4(B), requesting a pre-motion conference for motion practice under Fed. R. Civ. P. 56. I enclose here two documents—one per defendant—which show Santander's Rule 56.1 statement, each defendants' response, each defendants' counterstatement, and Santander's response to each defendants' counterstatement.[1]

As demonstrated by the Rule 56.1 statements and responses, there are no genuine issues of material fact. All parties agree what happened to the vehicle at issue in this action, a 2016 Nissan Rogue bearing VIN KNMAT2MT6GP703681 (the "Vehicle"). The only determination left is a legal one, for the Court to decide pursuant to Rule 56.

Nassau has written a policy for collecting unadjudicated traffic and/or parking tickets which it calls its "Boot and Tow Program." Under this policy and program, when two or more traffic and/or parking tickets are issued as to a specific vehicle, and those tickets are not resolved to Nassau's liking after a set period of time, Nassau will take the target vehicle into custody. The Vehicle is immobilized with a mechanical boot and then towed away. The purpose of taking a vehicle into custody is to pressure the operator of the Vehicle into resolving the outstanding tickets. The pressure comes from the inconvenience of losing the Vehicle and from the economic loss suffered due to the daily increasing costs for storage which Nassau authorizes its

---

[1] Note that I have modified the formatting, but not the text, since defendants provided me their version of the documents, to put all the information in one place. Note also that because individual practice rule 4(B)(i) does not require the filing of the supporting exhibits, we have not yet prepared the accompanying declarations and, therefore, not completed the citations to those declarations.



Norris McLaughlin, P.A.

October 8, 2021
Page 2

tow operator to recover by assertion of a lien against a vehicle taken under its Boot and Tow Program.

Nassau administers its Boot and Tow Program through a joint enterprise with private companies that handle the operational details. Nassau has a contract with IPT, LLC, also known as "Paylock," which contract authorizes a subcontract to a towing and storage provider, in this case, with C&R Automotive Inc. ("C&R") which is also known as AAAA-1.  By these contracts, Nassau empowers C&R to physically seize vehicles under the mantle of Nassau's police powers.[2]  Nassau determines the conditions under which a vehicle may be released when someone claims it and the conditions under which a vehicle may be disposed of if a vehicle is not claimed.

Nassau does not compensate C&R for its participating in these activities.  Instead, to compensate the private companies that conduct the towing and storage aspect of the Boot and Tow Program, Nassau authorizes a daily charge of $25.00 per day beginning on the day following the towing date. To assist in the recovery of such charges, Nassau enacted a local law, Nassau County Administrative Code 8-120.2 (f), purporting to make such charges into a lien against a vehicle towed under the program.  Nassau also takes the position that New York State law authorizes C&R to charge a lien against vehicles which it possesses by virtue of the Boot and Tow Program.

The Boot and Tow program is not consistent with Federal Constitutional principles, including the protection against unreasonable seizures mandated by the Fourth Amendment and the protection of due process mandated by the Fourteenth Amendment.  Nassau readily admits that its regular practice is to not obtain a warrant or judicial order before taking a vehicle into custody under its Boot and Tow Program. Nassau readily admits that its Boot and Tow policy does not include any form of hearing as to the propriety of the towing, the creation of liens for storage or the detention of towed vehicles until Nassau's conditions are met.  Nassau openly states its belief that it is not required, in conducting its Boot and Tow Program, to obtain warrants or judicial equivalents thereof and not required to afford any sort of hearing whatsoever.

The Boot and Tow program therefore violates the Fourth Amendment of the Constitution, because Nassau obtains no warrant or court order, and the unilateral allegation that a car owner owes Nassau money is not a recognized exception to the warrant requirement. Harrell v. City of New York, 138 F. Supp. 3d 479, 492 (S.D.N.Y. 2015) ("What it [the City of New York] cannot do, consistent with the Fourth Amendment, is summarily seize property . . . and hold the property as leverage to ensure payment. . . ."); Rosemont Taxicab Co. v. Philadelphia Parking Auth., 327 F. Supp. 3d 803,822 (E.D. Pa. 2018) (finding that "[s]eizing a taxicab solely as surety for the payment of fines that possibly may be assessed for a violation of

---

[2] Without Nassau's police powers, Paylock's and its towing subcontractor, defendant C&R, would be committing theft and extortion by taking custody of vehicles and demanding money for their return.

Norris McLaughlin, P.A.

October 8, 2021
Page 3

[a municipality's] regulations" violated the Fourth Amendment); <u>Fasciana v. Cty. of Suffolk</u>, 996 F. Supp. 2d 174, 179 (E.D.N.Y. 2014) (finding that the "[r]elease of the vehicle is not contingent on any condition, agreement, or circumstance" because "such a contingency would render <u>*Krimstock*</u> a nullity.") (referencing <u>Krimstock v. Kelly</u>,306 F.3d 40 (2d Cir. 2002)).

      The Boot and Tow program therefore also violates the Fourteenth Amendment of the Constitution.  <u>See</u>, <u>e.g.</u>, <u>Propert v. D.C.</u>, 948 F.2d 1327, 1332 (D.C. Cir. 1991) ("Every court which has considered the issue has held that the owners of towed vehicles-***whether illegally parked, abandoned or junk***-are entitled, at minimum, to post-deprivation notice and a hearing.").  Even though the defendants claim there to have been no deprivation because Santander could simply have paid to retrieve the car, that argument was disposed of eloquently by a district court over ***forty-two years ago***, which found that this argument faced one with ""the proverbial Hobson's choice:  he must pay the charges assessed . . . or forfeit his car," but "[u]nder either alternative, the owner is compelled to relinquish his personal property. . . without an opportunity to dispute the loss."  <u>Craig v. Carson</u>, 449 F.Supp. 385, 395 (M.D.Fla.1978); <u>see also</u> <u>Am. Honda Fin. Corp. v. City of Revere</u>, 471 F. Supp. 3d 399, 405 (D. Mass. 2020) (finding violative of due process an arrangement where a municipality "does not reimburse the garages" and, instead, the garage "profits from the sales."); <u>Henry</u>, 655 F. App'x at 464 ("[A] City's custom and practice of disposing of vehicles seized under these circumstances and not claimed by payment . . . without offering any post-impoundment process, violates Due Process.").

      On January 17, 2020, Nassau and C&R took custody of the Vehicle pursuant to Nassau's Boot and Tow policy.  Santander held a security interest and lien in the Vehicle at the time. Nassau followed its regular policy and practice in not obtaining a warrant, and not holding a hearing, relating to the Vehicle, instead simply informing Santander that it could retrieve the Vehicle only by paying C&R's towing bill and complying with Nassau's other conditions.  By these undisputed actions, Nassau and C&R violated the protections guaranteed to Santander under the Fourth and Fourteenth Amendments to the United States Constitution. The parties disagree solely on the legal consequences of the undisputed facts, and, therefore, the Court should set a briefing schedule for Santander to seek judgment as a matter of law.

                     Respectfully Submitted,

                     **Norris McLaughlin, P.A.**

                     By: _____

                        Nicholas Duston

Enclosures
cc:    All Counsel of Record (via ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SANTANDER CONSUMER USA, INC.,

      Plaintiff,

v.

THE COUNTY OF NASSAU, C&R
AUTOMOTIVE, INC. AND MICHAEL
SCHMELTZER,

      Defendants.

Case No.  20-cv-04790

**PLAINTIFF'S RESPONSE TO THE
COUNTY OF NASSAU'S COUNTER
STATEMENT OF MATERIAL FACTS,
IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND IN
OPPOSITION TO THE COUNTY OF
NASSAU'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant County of

Nassau (the "County") submits its Counter Statement in opposition to Plaintiff, Santander

Consumer USA, Inc. 's ("Santander"), motion for partial summary judgment and as its Statement

of Material Facts in Support of the County's cross-motion for summary judgment.

**<u>Parties</u>**

1.     Santander is in the regular business of financing vehicles and retaining first priority

liens in those vehicles. <u>See</u> Declaration of Felicia Jaimes ("Santander Decl."), ¶ __.

Response:  Denies information sufficient to form a belief as Santander's regular business

but admits that Santander is a financial institution.

2.     Defendant, The County of Nassau ("Nassau") is a municipal corporation organized

and existing under the laws of the State of New York. <u>See</u> Declaration of Nicholas A. Duston, Esq.

("Duston Decl."), Ex. __, Nassau's Answer, ¶ 14.

Response: Admit.

3.     C&R Automotive, Inc. ("C&R Automotive") is a corporation organized and

existing under the laws of the State of New York and operating as a business engaged in the towing

and storage of motor vehicles.  <u>See</u> Duston Decl., Ex. __, C&R Automotive's Answer, ¶ 15.

1

Response: Admit.

4.      Michael Schmeltzer is a citizen of the State of New York and the owner and person responsible for the practices and decisions made by C&R Automotive.  See Duston Decl., Ex. __, C&R Automotive's Answer, ¶ 16.

Response: Admit.

**Ownership of the Subject Vehicle**

5.      On or about September 25, 2018, Melissa Jenkins ("Jenkins") purchased a 2016 Nissan Rogue with vehicle identification number KNMAT2MT6GP703681 (the "Vehicle").  See Santander Decl., Ex. __, Santander 00004-00005.

Response: Admit.

6.      Jenkins financed the purchase of the Vehicle, and the retail installment contract was thereafter assigned to Santander. See Santander Decl., Ex. __, Santander 00004-00005.

Response: Admit.

7.      As of about October 17, 2018, Santander held the first priority duly perfected lien in the Vehicle. See Santander Decl. ¶ __ and Ex. __, Santander 00006.

Response: Admit, upon information and belief that Santander held a lien on the Vehicle but deny there is any proof of the priority of the lien, which is a legal conclusion.

8.      Santander's security agreement for the Vehicle calls for payment of $402.14 per month. See Santander Decl., Ex. __, Santander 00004-00005.

Response: Admit.

**Contract Between Nassau, Paylock and C&R Automotive**

9.      Nassau has a contract with non-party IPT LLC d/b/a Paylock.  See Duston Decl., Ex. __, NC000101-NC000115.

Response: Admit.

10.    The Paylock Contract states that Paylock "is in the business of providing parking enforcement services" and that Nassau "desires that Paylock provide the [such] services." <u>See</u> Duston Decl., Ex. __, NC000102.

Response: Admit.

11.    The Paylock Contract requires Paylock to provide to Nassau, among other things:

    a.    Devices "to immobilize vehicles identified in Nassau County's enforcement policy."

    b.    "Staff to identify and immobilize targeted vehicles."

    c.    An operator available 24/7 to answer questions from immobilized motorists and to process payments for "fees and parking fines and/or penalties," "[i]ntegration of its BootView Software systems with COUNTY ticket processing and/or court system(s) to communicate data to receive lists of vehicles eligible for immobilization daily and update payment data."

    d.    Training of Nassau's personnel on use of all related hardware and software used by Nassau.

    e.    "Design and supply vehicle seizure notices that will be affixed to booted vehicles at the time of immobilization."

    f.    "Apply On-Vehicle Notices to vehicles owing delinquent parking and red light camera violations that are not boot-eligible."

    g.    Collect fines and fees on behalf of Nassau and deposit same into an account designated by Nassau.

    h.    "All services as procured by Nassau County FP TV04118-1114 entitled 'Vehicle Immobilization Services' which is" incorporated into the Paylock Contract by reference.

<u>See</u> Duston Decl., Ex. __, NC000102-03.

Response: Admit that portions of the Paylock Contract are quoted accurately but  refer to the Paylock Contract for the actual and complete terms and conditions. NC000101-115.

12.    Section 6.1 of the Paylock Contract authorizes Paylock "to regularly patrol Nassau County public areas to identify and immobilize scofflaw vehicles." <u>See</u> Duston Decl., Ex. __, NC000106.

Response: Admit.

13.    The amount Paylock is permitted to charge for immobilization, towing, storage and other services are set by Nassau in Section 11.2 of the Paylock Contract.  <u>See</u> Duston Decl., Ex. __, NC000109.

Response: Admit.

14.    Section 15(c) of the Paylock Contract acknowledges that Paylock's records in Nassau's possession are subject to disclosure under Article 6 of the New York State Public Officer's Law ("Freedom of Information Law").  <u>See</u> Duston Decl., Ex. __, NC000112.

Response: Admit.

15.    The Paylock Contract creates an exclusive relationship between Nassau and Paylock for the services contemplated under the agreement. <u>See</u> Duston Decl., Ex. __, NC000103.

Response: Admit.

16.    Paylock has a contract with defendant C&R Automotive (hereafter, the "C&R Automotive Contract" and together with the Paylock Contract, the "Contracts").  <u>See</u> Duston Decl., Ex. __, NC000085-NC000100.

Response: Admit.

17.    The C&R Automotive Contract provides that "in order to fulfill [Paylock's] obligations to the County [of Nassau] under the Prime Contract [between Paylock and Nassau], [Paylock] desires to engage [C&R Automotive] to perform work in the area of towing and impoundment of motor vehicles." <u>See</u> Duston Decl., Ex. __, NC000085.

Response: Admit.

18.    Section 6(a) of the C&R Automotive Contract states that C&R Automotive is required to tow vehicles identified by Paylock "as County policy may dictate." <u>See</u> Duston Decl., Ex. __, NC000086.

Response: Admit.

19.    Section 6(b) of the C&R Automotive Contract states that the procedure C&R Automotive must following with respect to "storing, disposing and determining ownership of impounded vehicles will meet all county and state laws and policies." <u>See</u> Duston Decl., Ex. __, NC000087.

Response: Admit.

20.    Section 6(r) of the C&R Automotive Contract provides that C&R Automotive's employees may be required "to attend training courses provided by the County [of Nassau], at no cost to such employees, covering such professional conduct." <u>See</u> Duston Decl., Ex. __, NC000090.

Response: Admit.

21.    Section 6(r) of the C&R Automotive Contract requires C&R Automotive to provide a list of its employees assigned to work under the C&R Automotive Contract to Nassau and to inform Nassau within three (3) days of any changes to the list. <u>See</u> Duston Decl., Ex. __, NC000090.

Response: Admit.

22.    Section 12 of the C&R Automotive Contract gives Nassau full access to C&R Automotive's books and records "maintained or retained by or on behalf of [Paylock]" pursuant to the agreement. <u>See</u> Duston Decl., Ex. __, NC000093.

Response:  Deny. See NC000093.

23.     The Contracts governed the relationship between Nassau and Paylock and C&R Automotive on January 17, 2020. <u>See</u> Duston Decl., Ex. __, Nassau Interrogatory Response No. 11.

Response: Admit.

24.     Pursuant to the Contracts, Nassau outsources day-to-day operations of its Boot and Tow policy to private companies.  <u>See</u> <u>generally</u> the Contracts.

Response: Deny and refer to the Contracts for the obligations contained therein.

25.     Nassau determines the conditions under which a vehicle may be released when someone claims it and the conditions under which a vehicle may be disposed of if a vehicle is not claimed. <u>See</u> Duston Decl., Ex. __, SANTANDER_00001-00002.

Response:  Deny, except admit that the conditions for release are set forth in the Nassau County's  Boot and Tow Policy. NC000001-12.

26.     To compensate the private companies that conduct the towing and storage aspect of the Boot and Tow program, Nassau authorizes a daily charge of $25.00 per day beginning on the day following the towing date. To assist in the recovery of such charges, Nassau enacted a local law, Nassau County Administrative Code 8-120.2 (f), purporting to make such charges into a lien against a vehicle towed under the program. <u>See</u> Nassau County Admin. Code 8-120.2.

Response: Deny. See Administrative Code and Nassau County's Boot and Tow Policy NC000001-12

**<u>Seizure of the Subject Vehicle</u>**

27.     On January 15, 2020, the Vehicle was "booted," meaning a device was attached to one wheel which prevented the Vehicle from being moved by the driver. <u>See</u> Duston Decl., Ex. __, NC000015-NC000021.

Response: Admit.

28.     On January 17, 2020, the Vehicle was towed by C&R. <u>See</u> Duston Decl., Ex. __, NC000015-NC000021.

Response: Admit.

29.     On January 15 and January 17, 2020, Santander held the first priority duly perfect security interest and lien in The Vehicle. <u>See</u> Santander Decl. ¶ __ and Ex. __, Santander 00006.

Response: Admit that Santander purportedly held a lien on the Vehicle. The remainder of the statement is a legal conclusion to which no response is required..

**<u>Defendants' Policies and Procedures</u>**

30.     Nassau has a written policy governing its collection of traffic and/or parking tickets which is entitled "Nassau County Boot and Tow Program: Policy and Procedures" ("Nassau's Boot and Tow policy"). <u>See</u> Duston Decl., Ex. __, Interog. Answer 5; Duston Decl, Ex. __, NC000001-000012.

Response: Admit.

31.     Nassau has no additional unwritten policy for collecting traffic and/or parking tickets. <u>See</u> Duston Decl., Ex. __, Interog. Answer 8.

Response: Admit.

32.     Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not include obtaining a warrant or Court order at any time with respect to The Vehicles towed pursuant to Nassau's Boot and Tow Program. <u>See</u> Duston Decl., Ex. __, Admit Answer 19.

Response: Admit.

33.     Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not include affording a hearing before a neutral decision maker at any time relative to the propriety of the towing of a vehicle under that policy. <u>See</u> Duston Decl., Ex. __, Admit Answers 10 and 21.

Response: Admit.

34.     Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not afford a hearing before a neutral decision maker at any time relevant to the propriety of Nassau allowing a private entity to assert a lien against a vehicle towed under that policy. See Duston Decl., Ex. __, Admit Answer 21.

Response: Admit.

35.     Nassau's Boot and Tow policy for collecting traffic tickets and/or parking tickets does not afford a hearing at any time relative to Nassau's demand for a release of liability as a condition for release of a vehicle that has been towed under that policy. See Duston Decl., Ex. __, Admit Answer 21.

Response: Admit.

36.     Nassau at all times followed its standard practices under its Boot and Tow Program with respect to The Vehicle (except that Nassau requested that The Vehicle be held and not auctioned). See Duston Decl., Ex. __, Interog. Answer 21.

Response: Admit.

37.     Nassau did not obtain any warrant or judicial order with regard to the Vehicle. See Duston Decl., Ex. __, Interog. Answer 18.

Response: Admit.

38.     Nassau did not arrange for a hearing before a neutral decision maker relating to the propriety of the towing of the Vehicle. See Duston Decl., Ex. __, Admit Answer 9.

Response: Admit.

39.     During the year of 2020, Nassau enforced its policy for collecting traffic and/or parking tickets with the assistance of a company called "IPT, LLC d/b/a Paylock" pursuant to the Paylock Contract. See Duston Decl., Ex. __, Nassau disclosure response 000057-000083.

Response: Admit.

40.     During the year of 2020, Paylock provided the services required under its contract with Nassau in part through the assistance of C&R Automotive pursuant to the C&R Automotive Contract. <u>See</u> Duston Decl., Ex. __, Nassau disclosure response 000085-000100.

Response: Admit.

41.     The C&R Automotive Contract was signed by Michael Schmeltzer on behalf of C&R Automotive. <u>See</u> Duston Decl., Ex. __, Nassau disc. 000099.

Response: Admit.

## <u>Nassau's Seizure and Detention of the Vehicle Pursuant to the Boot and Tow Policy</u>

42.     On January 17, 2020, the Vehicle was removed from its location by C&R Automotive pursuant to Nassau's Boot and Tow policy for collecting traffic and/or parking tickets. <u>See</u> Duston Decl., Ex. __, Admit Answer 4.

Response: Admit.

43.     Nassau did not arrange for a hearing before a neutral decision maker relating to the turnover of the Vehicle to C&R Automotive. <u>See</u> Duston Decl., Ex. __, Admit Answer 20.

Response: Admit.

44.     Nassau did not arrange for a hearing before a neutral decision maker relating to the fees associated with recovering the Vehicle.  <u>See</u> Duston Decl., Ex. __, Admit Answer 24.

Response: Admit but deny that Santander was charged any fees by the County.

45.     Nassau did not arrange for a hearing before or neutral decision maker relative to Nassau's demand for a release as a condition for a release of the Vehicle. <u>See</u> Duston Decl., Ex. __, Admit Answer 20.

Response: Admit.

**January 21, 2020 Letter**

46.     On January 21, 2020, Nassau sent a written communication to Santander (the "January Letter"). <u>See</u> Duston Decl., Ex. __, NC000022-NC000024.

Response: Admit.

47.     The January Letter notified Santander that the Vehicle had been "immobilized and removed" and was being stored at C&R Automotive and that "storage fees will continue to accrue until the vehicle is claimed." <u>See</u> Duston Decl., Ex. __, Admit Answer 23 and NC000022-NC000024.

Response: Admit.

**The February 5, 2020 Letter**

48.     On February 5, 2020, Nassau sent a written communication to Santander (the "February Letter"). <u>See</u> Duston Decl., Ex. __, Santander_00003 and Admit Answer 29.

Response: Admit.

49.     The February Letter states that the Vehicle was "seized by the County of Nassau for violation of the Vehicle and Traffic Law." <u>See</u> Duston Decl., Ex. __, Santander_00003.

Response: Admit the February Letter contains the quoted statement but denies that it properly expresses the County's policy and procedure, denies the County took possession of the Vehicle and asserts that it acted consistently with its Boot and Tow policy. See NO000001-000012.

Response:

50.     The February Letter states that the Vehicle:

is incurring storage fees at a designated impound yard for the County. If you do not respond to this letter within ten (10) days, the county and the designated impound yard will pursue all rights and remedies under the Lien Law of the State of New York. Please note that storage fees will continue to accrue until the date the vehicle is reclaimed or disposed of.

<u>See</u> Duston Decl., Ex. __, Santander_00003.

Response:  Admit the February Letter contains the quoted statement but denies that it properly expresses the County's policy and procedure, denies the County took possession of the Vehicle and asserts that it acted consistently with its Boot and Tow policy. See NO000001-000012.

**Charges and Fees**

51.     C&R Automotive purported to charge storage fees of $25.00 per day for the Vehicle from the tow date of January 17, 2020. See Duston Decl., Ex. __, C&R Automotive response to production 00003.

Response: Admit.

52.     C&R Automotive purported to charge Santander a $130 tow charge. See Duston Decl., Ex. __, Santander_00034.

Response: Admit.

53.     C&R Automotive asserted a lien, for its actions in towing and storing the Vehicle pursuant to Nassau's Boot and Tow policy, of $148.21 for towing and storage at $25.00 per day. See Duston Decl., Ex. __, C&R Automotive response to production 00002.

Response: Admit that C&R Automotive asserted a lien but deny that the lien was asserted pursuant to Nassau County's Boot and Tow Policy but rather New York Lien Law. See C&R 00002.

54.     Nassau conditioned release of the Vehicle upon Santander releasing Nassau and C&R Automotive from all claims relating to the towing of the Vehicle. See Duston Decl., Ex. __, Admit Answer 25.

Response: Deny that Nassau imposed any specific conditions on the release of the Vehicle but admits that such a release is required from a lienor pursuant to the Boot and Tow Policy.

55.     Santander did not agree to Nassau's conditions for release of the Vehicle. See Santander Decl., ¶ __.

11

Response: Admit that Santandar did not seek the release of the Vehicle pursuant ot the Boot and Tow Policy.

56.     Santander did not agree to C&R Automotive's conditions for release of the Vehicle. See Santander Decl., ¶ __.

Response: Admit insofar as Santander claims it obtained the release of the Vehicle without conditions from C&R. See ¶57, below.

**Recovery of the Vehicle**

57.     On April 20, 2021, after the filing of this lawsuit, C&R released the Vehicle to Santander unconditionally. See Duston Decl., Ex. __, Santander_00008.

Response: Admit.

**Damages**

58.     Santander was unable to repossess the Vehicle from January 17, 2020 to April 20, 2021, or just over 15 months. See *Supra*, ¶¶ 42, 57.

Response: Deny. Santander had ample notice and opportunity to recover the vehicle and mitigate its alleged damages from January17, 2020 onward. See C&R 00002, Santander 00008-33, NC000023.

59.     The monthly payments under the retail installment contract are $402.14. See Santander Decl., Ex. __, Santander 00004-00005.

Response: Admit.

60.     The monthly payment amount, if calculated over the course of time the Vehicle was held by Defendants, would be $402.14x15=$6,032.10. See Duston Decl, ¶ __.

Response: Admit that the owner of the Vehicle agreed to pay monthly payments in that amount and the mathematical calculation is correct but deny that the sum is recoverable from

defendants or otherwise represents a loss of property, monies or damages attributable to defendant's conduct. See C&R 00002, Santander 00008-33, NC000023.

## ADDITIONAL STATEMENTS OF UNDISPUTED FACTS IN SUPPORT OF THE COUNTY'S CROSS-MOTION FOR SUMMARY JUDGMENT

1.     Upon placement of the boot on the Vehicle on January 15, 2020, Melissa Jenkins was given the information necessary to obtain the release of the boot from the Vehicle including how much was due and owing in unpaid parking violations and notices of liability and the date and time when the Vehicle would be towed if arrangements were not made to pay the outstanding sums due in order to have the boot removed. NC000017-18.

Response: Plaintiff denies information sufficient to form a belief as to the substance and timing of information given to Jenkins, and denies it is a material fact relating the legal issues on this motion, and admits that Nassau's "boot record" indicates that Jenkins was instructed to pay $1,946.64 in cash or $2,005.04 by credit card to avoid tow of the Vehicle that was scheduled to occur on January 17, 2020.  NC000017-18.

2.     Ms Jenkins did not make arrangements to have the boot removed and the Vehicle, which was in a public parking lot owned by the County, was towed on January 17, 2020 to a tow yard operated by C&R Automotive, Inc. NC000018-20.

Response: Plaintiff denies information sufficient to form a belief as what Jenkins did or did not do, and denies it is a material fact relating the legal issues on this motion, but admits that the Vehicle was towed on January 17, 2020 and transferred to a tow yard operated by C&R Automotive. NC000018-20.

3.     By letters dated January 21, 2020 both Ms. Jenkins and Plaintiff were notified of the location of the vehicle and provided instructions as to how to obtain the release of the Vehicle. In particular, Plaintiff was advised that if Ms. Jenkins, the registered owner did not retrieve the

13

Vehicle, Plaintiff could obtain the release of the Vehicle as a Financial Institution holding a lien or a lease on the Vehicle. NC 000022-24.

Response: Plaintiff denies information sufficient to form a belief as to any notice sent to Jenkins, and denies it is a material fact relating the legal issues on this motion. Plaintiff admits that the January Letter was sent to Plaintiff, refers to the January Letter for the actual and complete statements made to Plaintiff, but admits that the January Letter set out conditions for Plaintiff's retrieval of the Vehicle. NC000022-NC000024.

4.      Pursuant to the instructions given to Plaintiff pursuant ot the County's Boot and Tow Policy, Plainitf was advised that it could retrieve the Vehicle by presenting evidence that it was entitled to possession of the Vehicle rather than Ms. Jenkins, the registered owner. NC000024; NC000001-12.

Response: Plaintiff refers to the January Letter for the actual and complete instructions given to Plaintiff but admits that the January Letter identified various proofs Plaintiff was required to produce in order to repossess the Vehicle and also informed Plaintiff that it would be responsible to pay towing and storage charges. NC 000022-24.

5.      Plaintiff's representative called the County's contractor on February 5, 2020 but did not take further steps to retrieve the Vehicle as provided in the Boot and Tow policy (NC000031-32).

Response: Plaintiff denies that it "did not take further steps to retrieve the Vehicle," but admits it did not accede to the County's or C&R's illegal conditions placed on release of the Vehicle.  Plaintiff took steps to recover the Vehicle including, among other things, assignment of repossession efforts to a third-party recovery agent and commencement of this Action.  Plaintiff Santander_00008-_00034; Complaint.

6.      Plaintiff commenced this action on October 6, 2020. Complaint.

Response: Admit.

7.      Plaintiff took possession of the Vehicle on April 20, 2021. Santander 00008.

Response: Admit.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANTANDER CONSUMER USA, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>THE COUNTY OF NASSAU, C&R AUTOMOTIVE, INC. AND MICHAEL SCHMELTZER,<br><br>    Defendants. | Case No.  20-cv-04790<br><br>**C&R AUTOMOTIVE, INC. AND MICHAEL SCHMELTZER'S COUNTER STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND  THEIR STATEMENT IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants C&R Automotive, Inc. and Michael Schmeltzer (collectively, the "C&R Defendants") submit their Counter Statement in opposition to Plaintiff, Santander Consumer USA, Inc. 's ("Santander"), motion for partial summary judgment and as their Statement of Material Facts in Support of the C&R Defendant's cross-motion for summary judgment.

**Parties**

1.    Santander is in the regular business of financing vehicles and retaining first priority liens in those vehicles. <u>See</u> Declaration of Felicia Jaimes ("Santander Decl."), ¶

    <u>Response</u>:  Denies information sufficient to form a belief as to Santander's regular business but admits that Santander is a financial institution.

2.    Defendant, The County of Nassau ("Nassau") is a municipal corporation organized and existing under the laws of the State of New York. <u>See</u> Duston Decl., Ex. __, Nassau's Answer, ¶ 14.

    <u>Response</u>: Admit.

3.      C&R Automotive, Inc. ("C&R Automotive") is a corporation organized and existing under the laws of the State of New York and operating as a business engaged in the towing and storage of motor vehicles.  See Duston Decl., Ex. __, C&R Automotive's Answer, ¶ 15.

Response: Admit.

4.      Michael Schmeltzer is a citizen of the State of New York and the owner and person responsible for the practices and decisions made by C&R Automotive.  See Duston Decl., Ex. __, C&R Automotive's Answer, ¶ 16.

Response: Admit with clarification. When the C&R Defendants tow and/or store a vehicle at the direction of IPT LLC, C&R's practices and decisions relating to that vehicle are guided by the Agreement by and Between IPT LLC and C&R Automotice Inc. d/b/a AAAA-1 Auto & Towing. See NC000085-000100.

**Ownership of the Subject Vehicle**

5.      On or about September 25, 2018, Melissa Jenkins ("Jenkins") purchased a 2016 Nissan Rogue with vehicle identification number KNMAT2MT6GP703681 (the "Vehicle").  See Santander Decl., Ex. __, Santander 00004-00005.

Response: Admit.

6.      Jenkins financed the purchase of the Vehicle, and the retail installment contract was thereafter assigned to Santander. See Santander Decl., Ex. __, Santander 00004-00005.

Response: Admit.

7.      As of about October 17, 2018, Santander held the first priority duly perfected lien in the Vehicle. See Santander Decl. ¶ __ and Ex. __, Santander 00006.

Response: Admit, upon information and belief, that Santander held a lien on the Vehicle. The remainder of the statement is a legal conclusion to which no response is required.

2

8.      Santander's security agreement for the Vehicle calls for payment of $402.14 per month. <u>See</u> Santander Decl., Ex. __, Santander 00004-00005.

<u>Response</u>: Admit.

**<u>Contract Between Nassau, Paylock and C&R Automotive</u>**

9.      Nassau has a contract with non-party IPT LLC d/b/a Paylock.  <u>See</u> Duston Decl., Ex. __, NC000101-NC000115.

<u>Response</u>: Admit.

10.     The Paylock Contract states that Paylock "is in the business of providing parking enforcement services" and that Nassau "desires that Paylock provide the [such] services." <u>See</u> Duston Decl., Ex. __, NC000102.

<u>Response</u>: Admit that the Paylock Contract is accurately quoted but refer to the Paylock Contract for the actual and complete terms and conditions.

11.     The Paylock Contract requires Paylock to provide to Nassau, among other things:

   a.  Devices "to immobilize vehicles identified in Nassau County's enforcement policy."

   b.  "Staff to identify and immobilize targeted vehicles."

   c.  An operator available 24/7 to answer questions from immobilized motorists and to process payments for "fees and parking fines and/or penalties," "[i]ntegration of its BootView Software systems with COUNTY ticket processing and/or court system(s) to communicate data to receive lists of vehicles eligible for immobilization daily and update payment data."

   d.  Training of Nassau's personnel on use of all related hardware and software used by Nassau.

   e.  "Design and supply vehicle seizure notices that will be affixed to booted vehicles at the time of immobilization."

   f.  "Apply On-Vehicle Notices to vehicles owing delinquent parking and red light camera violations that are not boot-eligible."

3

g. Collect fines and fees on behalf of Nassau and deposit same into an account designated by Nassau.

h. "All services as procured by Nassau County FP TV04118-1114 entitled 'Vehicle Immobilization Services' which is" incorporated into the Paylock Contract by reference.

See Duston Decl., Ex. __, NC000102-03.

> Response: Admit that portions of the Paylock Contract are accurately quoted but refer to the Paylock Contract for the actual and complete terms and conditions. NC000101-115.

12.    Section 6.1 of the Paylock Contract authorizes Paylock "to regularly patrol Nassau County public areas to identify and immobilize scofflaw vehicles." See Duston Decl., Ex. __, NC000106.

> Response: Admit that Section 6.1 of the the Paylock Contract is accurately quoted but refer to the Paylock Contract for the actual and complete terms and conditions.

13.    The amount Paylock is permitted to charge for immobilization, towing, storage and other services are set by Nassau in Section 11.2 of the Paylock Contract.  See Duston Decl., Ex. __, NC000109.

> Response: Admit but refer to the Paylock Contract for the actual and complete terms and conditions.

14.    Section 15(c) of the Paylock Contract acknowledges that Paylock's records in Nassau's possession are subject to disclosure under Article 6 of the New York State Public Officer's Law ("Freedom of Information Law").  See Duston Decl., Ex. __, NC000112.

> Response: Admit but refer to the Paylock Contract for the actual and complete terms and conditions.

15.    The Paylock Contract creates an exclusive relationship between Nassau and Paylock for the services contemplated under the agreement. See Duston Decl., Ex. __, NC000103.

4847-4370-9181, v. 1

Response: Admit.

16.    Paylock has a contract with defendant C&R Automotive (hereafter, the "C&R Automotive Contract" and together with the Paylock Contract, the "Contracts"). See Duston Decl., Ex. __, NC000085-NC000100.

Response: Admit.

17.    The C&R Automotive Contract provides that "in order to fulfill [Paylock's] obligations to the County [of Nassau] under the Prime Contract [between Paylock and Nassau], [Paylock] desires to engage [C&R Automotive] to perform work in the area of towing and impoundment of motor vehicles." See Duston Decl., Ex. __, NC000085.

Response: Admit but refer to the C&R Automotive Contract for the actual and complete terms and conditions.

18.    Section 6(a) of the C&R Automotive Contract states that C&R Automotive is required to tow vehicles identified by Paylock "as County policy may dictate." See Duston Decl., Ex. __, NC000086.

Response: Admit but refer to the C&R Contract for the actual and complete terms and conditions.

19.    Section 6(b) of the C&R Automotive Contract states that the procedure C&R Automotive must following with respect to "storing, disposing and determining ownership of impounded vehicles will meet all county and state laws and policies." See Duston Decl., Ex. __, NC000087.

Response: Admit but refer to the C&R Contract for the actual and complete terms and conditions.

5

20.     Section 6(r) of the C&R Automotive Contract provides that C&R Automotive's employees may be required "to attend training courses provided by the County [of Nassau], at no cost to such employees, covering such professional conduct." See Duston Decl., Ex. __, NC000090.

Response: Admit but refer to the C&R Contract for the actual and complete terms and conditions.

21.     Section 6(r) of the C&R Automotive Contract requires C&R Automotive to provide a list of its employees assigned to work under the C&R Automotive Contract to Nassau and to inform Nassau within three (3) days of any changes to the list. See Duston Decl., Ex. __, NC000090.

Response: Admit but refer to the C&R Contract for the actual and complete terms and conditions.

22.     Section 12 of the C&R Automotive Contract gives Nassau full access to C&R Automotive's books and records "maintained or retained by or on behalf of [Paylock]" pursuant to the agreement. See Duston Decl., Ex. __, NC000093.

Response:  Deny. See NC000093.

23.     The Contracts governed the relationship between Nassau and Paylock and C&R Automotive on January 17, 2020. See Duston Decl., Ex. __, Nassau Interrogatory Response No. 11.

Response: Admit.

24.     Pursuant to the Contracts, Nassau outsources day-to-day operations of its Boot and Tow policy to private companies.  See generally the Contracts.

Response: Deny and refer to the Contracts for the obligations contained therein.

25.    Nassau determines the conditions under which a vehicle may be released when someone claims it and the conditions under which a vehicle may be disposed of if a vehicle is not claimed. See Duston Decl., Ex. __, SANTANDER_00001-00002.

Response:  Admit that the conditions for release are set forth in the Nassau County's  Boot and Tow Policy and the C&R Automotive Contract. NC000001-12; NC000089-90.

26.    To compensate the private companies that conduct the towing and storage aspect of the Boot and Tow program, Nassau authorizes a daily charge of $25.00 per day beginning on the day following the towing date. To assist in the recovery of such charges, Nassau enacted a local law, Nassau County Administrative Code 8-120.2 (f), purporting to make such charges into a lien against a vehicle towed under the program. See Nassau County Admin. Code 8-120.2.

Response: Deny. See Administrative Code and Nassau County's Boot and Tow Policy NC000001-12; Schedule 1 of the C&R Automotive Contract NC000100.

**Seizure of the Subject Vehicle**

27.    On January 15, 2020, the Vehicle was "booted," meaning a device was attached to one wheel which prevented the Vehicle from being moved by the driver. See Duston Decl., Ex. __, NC000015-NC000021.

Response: Admit.

28.    On January 17, 2020, the Vehicle was towed by C&R. See Duston Decl., Ex. __, NC000015-NC000021.

Response: Admit.

29.    On January 15 and January 17, 2020, Santander held the first priority duly perfect security interest and lien in The Vehicle. See Santander Decl. ¶ __ and Ex. __, Santander 00006.

Response: Admit that Santander purportedly held a lien on the Vehicle. The remainder of the statement is a legal conclusion to which no response is required.

7

**Defendants' Policies and Procedures**

30.    Nassau has a written policy governing its collection of traffic and/or parking tickets which is entitled "Nassau County Boot and Tow Program: Policy and Procedures" ("Nassau's Boot and Tow policy"). See Duston Decl., Ex. __, Interog. Answer 5; Duston Decl, Ex. __, NC000001-000012.

Response: Admit.

31.    Nassau has no additional unwritten policy for collecting traffic and/or parking tickets. See Duston Decl., Ex. __, Interog. Answer 8.

Response: Admit.

32.    Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not include obtaining a warrant or Court order at any time with respect to The Vehicles towed pursuant to Nassau's Boot and Tow Program. See Duston Decl., Ex. __, Admit Answer 19.

Response: Admit.

33.    Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not include affording a hearing before a neutral decision maker at any time relative to the propriety of the towing of a vehicle under that policy. See Duston Decl., Ex. __, Admit Answers 10 and 21.

Response: Admit.

34.    Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not afford a hearing before a neutral decision maker at any time relevant to the propriety of Nassau allowing a private entity to assert a lien against a vehicle towed under that policy. See Duston Decl., Ex. __, Admit Answer 21.

Response: Admit.

35.    Nassau's Boot and Tow policy for collecting traffic tickets and/or parking tickets does not afford a hearing at any time relative to Nassau's demand for a release of liability as a

condition for release of a vehicle that has been towed under that policy. See Duston Decl., Ex. __, Admit Answer 21.

Response: Admit.

36. Nassau at all times followed its standard practices under its Boot and Tow Program with respect to The Vehicle (except that Nassau requested that The Vehicle be held and not auctioned). See Duston Decl., Ex. __, Interog. Answer 21.

Response: Admit.

37. Nassau did not obtain any warrant or judicial order with regard to the Vehicle. See Duston Decl., Ex. __, Interog. Answer 18.

Response: Admit.

38. Nassau did not arrange for a hearing before a neutral decision maker relating to the propriety of the towing of the Vehicle. See Duston Decl., Ex. __, Admit Answer 9.

Response: Admit.

39. During the year of 2020, Nassau enforced its policy for collecting traffic and/or parking tickets with the assistance of a company called "IPT, LLC d/b/a Paylock" pursuant to the Paylock Contract. See Duston Decl., Ex. __, Nassau disclosure response 000057-000083.

Response: Admit.

40. During the year of 2020, Paylock provided the services required under its contract with Nassau in part through the assistance of C&R Automotive pursuant to the C&R Automotive Contract. See Duston Decl., Ex. __, Nassau disclosure response 000085-000100.

Response: Admit.

41. The C&R Automotive Contract was signed by Michael Schmeltzer on behalf of C&R Automotive. See Duston Decl., Ex. __, Nassau disc. 000099.

9

Response: Admit.

**Nassau's Seizure and Detention of the Vehicle Pursuant to the Boot and Tow Policy**

42.    On January 17, 2020, the Vehicle was removed from its location by C&R Automotive pursuant to Nassau's Boot and Tow policy for collecting traffic and/or parking tickets. See Duston Decl., Ex. __, Admit Answer 4.

Response: Admit that the Vehicle was removed from its location on January 17, 2020, pursuant to Paylock's direction.

43.    Nassau did not arrange for a hearing before a neutral decision maker relating to the turnover of the Vehicle to C&R Automotive. See Duston Decl., Ex. __, Admit Answer 20.

Response: Admit.

44.    Nassau did not arrange for a hearing before a neutral decision maker relating to the fees associated with recovering the Vehicle.  See Duston Decl., Ex. __, Admit Answer 24.

Response: Admit.

45.    Nassau did not arrange for a hearing before or neutral decision maker relative to Nassau's demand for a release as a condition for a release of the Vehicle. See Duston Decl., Ex. __, Admit Answer 20.

Response: Admit.

**January 21, 2020 Letter**

46.    On January 21, 2020, Nassau sent a written communication to Santander (the "January Letter"). See Duston Decl., Ex. __, NC000022-NC000024.

Response: Admit.

47.    The January Letter notified Santander that the Vehicle had been "immobilized and removed" and was being stored at C&R Automotive and that "storage fees will continue to accrue

10

until the vehicle is claimed." <u>See</u> Duston Decl., Ex. __, Admit Answer 23 and NC000022-NC000024.

> <u>Response</u>: Admit.

**The February 5, 2020 Letter**

> 48.    On February 5, 2020, Nassau sent a written communication to Santander (the "February Letter"). <u>See</u> Duston Decl., Ex. __, Santander_00003 and Admit Answer 29.

> <u>Response</u>: Admit.

> 49.    The February Letter states that the Vehicle was "seized by the County of Nassau for violation of the Vehicle and Traffic Law." <u>See</u> Duston Decl., Ex. __, Santander_00003.

> <u>Response</u>: Admit.

> 50.    The February Letter states that the Vehicle:

> is incurring storage fees at a designated impound yard for the County. If you do not respond to this letter within ten (10) days, the county and the designated impound yard will pursue all rights and remedies under the Lien Law of the State of New York. Please note that storage fees will continue to accrue until the date the vehicle is reclaimed or disposed of.

See Duston Decl., Ex. __, Santander_00003.

> <u>Response</u>:  Admit that the February Letter contains the quoted statement.

**Charges and Fees**

> 51.    C&R Automotive purported to charge storage fees of $25.00 per day for the Vehicle from the tow date of January 17, 2020. <u>See</u> Duston Decl., Ex. __, C&R Automotive response to production 00003.

> <u>Response</u>: Admit.

> 52.    C&R Automotive purported to charge Santander a $130 tow charge. <u>See</u> Duston Decl., Ex. __, Santander_00034.

> <u>Response</u>: Admit.

4847-4370-9181, v. 1

53.     C&R Automotive asserted a lien, for its actions in towing and storing the Vehicle pursuant to Nassau's Boot and Tow policy, of $148.21 for towing and storage at $25.00 per day. See Duston Decl., Ex. __, C&R Automotive response to production 00002.

Response: Admit that C&R Defendants asserted a lien but deny the remainder of the statement.

54.     Nassau conditioned release of the Vehicle upon Santander releasing Nassau and C&R Automotive from all claims relating to the towing of the Vehicle. See Duston Decl., Ex. __, Admit Answer 25.

Response: Denies information sufficient to form a belief as to what conditions Nassau imposed upon the release of the Vehicle but refers to the Contracts with regard to the conditions necessary for the release of a vehicle.

55.     Santander did not agree to Nassau's conditions for release of the Vehicle. See Santander Decl., ¶ __.

Response: Denies information sufficient to form a belief as to whether Santander did or did not agree to Nassau's conditions for the release of the Vehicle.

56.     Santander did not agree to C&R Automotive's conditions for release of the Vehicle. See Santander Decl., ¶ __.

Response: Admit with clarification.  C&R Automotive's conditions for the release of the Vehicle were guided by the C&R Automotive Contract.

**Recovery of the Vehicle**

57.     On April 20, 2021, after the filing of this lawsuit, C&R released the Vehicle to Santander unconditionally. See Duston Decl., Ex. __, Santander_00008.

Response: Admit.

12

**Damages**

58.     Santander was unable to repossess the Vehicle from January 17, 2020 to April 20, 2021, or just over 15 months.  <u>See</u> *Supra*, ¶¶ 42, 57.

<u>Response</u>: Deny. Santander had ample notice and opportunity to recover the vehicle and mitigate its alleged damages from January17, 2020 onward. See C&R 00002, Santander 00008-33, NC000023.

59.     The monthly payments under the retail installment contract are $402.14.  <u>See</u> Santander Decl., Ex. __, Santander 00004-00005.

<u>Response</u>: Admit.

60.     The monthly payment amount, if calculated over the course of time the Vehicle was held by Defendants, would be $402.14x15=$6,032.10.  <u>See</u> Duston Decl, ¶ __.

<u>Response</u>: Admit that the owner of the Vehicle agreed to pay monthly payments in that amount and the mathematical calculation is correct but deny that the sum is recoverable from defendants or otherwise represents a loss of property, monies or damages attributable to defendant's conduct. See C&R 00002, Santander 00008-33, NC000023.

## ADDITIONAL STATEMENTS OF UNDISPUTED FACTS IN SUPPORT OF THE C&R DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

1.     Section 6(o) of the C&R Automotive Contract provides, in part, that "[i]n order to obtain the release of the subject vehicle…[C&R Defendants] has to verify that all outstanding vehicle-related debt with the County, per the BootView Software, has been fully satisfied." <u>See</u> NC000089-90.

Response: Plaintiff admits that portions of the C&R Automotive Contract are quoted accurately, with the omitted clause reflected by an ellipses and bracketed modifications, but

Plaintiff refers to the C&R Automotive Contract for its actual and complete terms and conditions. NC000086-100.

2.      Section 6(o) of the C&R Automotive Contract provides that "[IPT LLC d/b/a PayLock] reserves the right to change release procedures at any time upon the provision of written notice to the [C&R Defendants]." See NC000090.

Response: Plaintiff admits that portions of the C&R Automotive Contract are quoted accurately, with bracketed modifications, but Plaintiff refers to the C&R Automotive Contract for its actual and complete terms and conditions. NC000086-100.

4847-4370-9181, v. 1