## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

SANTANDER CONSUMER USA, INC.,

      Plaintiff,

v.

THE COUNTY OF NASSAU, C&R
AUTOMOTIVE, INC. AND MICHAEL
SCHMELTZER,

      Defendants.

**CIVIL CASE NO:  20-cv-04790**

---

## SANTANDER CONSUMER USA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

---

**NORRIS McLAUGHLIN P.A.**
Nicholas A. Duston, Esq.
7 Times Square, 21st Fl.
New York, NY 10036
(908) 252-4208
naduston@norris-law.com
*Attorneys for Plaintiff, Santander Consumer
USA, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

   I.   Nassau's "Boot and Tow" Policy ......................................................................... 3

   II.  Nassau's Seizure and Detention of the Vehicle Pursuant to the Boot and Tow Policy .................................................................................................................. 4

   III. Damages ............................................................................................................. 5

LEGAL ARGUMENT ..................................................................................................... 6

   I.   Summary Judgment is warranted where there are no *genuine* disputes of any *material* fact, and where Plaintiffs are entitled to judgment as a matter of law. ............... 6

   II.  Santander is entitled to judgement as a matter of law under 42 U.S.C. § 1983.................. 7

       A.  Defendants deprived Santander of constitutionally protected property interests in the Vehicle. ................................................................................. 7

       B.  Nassau Deprived Santander Of A Federal Right When It Unreasonably Seized the Vehicle. ...................................................................................... 9

       C.  Nassau Deprived Santander Of The Federal Right to Due Process Guaranteed By The Fourteenth Amendment. ......................................................... 14

       D.  Nassau and C&R's Actions were all Taken under Color of Law. .......................... 16

   III. There is no genuine dispute that Nassau is liable under *Monell*, because Nassau's policies and customs were the "moving force" behind the deprivations. ......................... 17

   IV. C&R's Defenses Based Upon Outdated Case Law Are Without Merit. .......................... 17

       A.  The inapplicable private party good faith defense. ................................................. 18

       B.  The inapplicable Mays argument. ....................................................................... 20

   V.  Santander's Damages.......................................................................................... 22

   VI. Santander's Request For Declaratory Relief........................................................... 24

CONCLUSION................................................................................................................ 25

CERTIFICATION ........................................................................................................... 1

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Addante v. Vill. of Elmwood Park,
    541 F. Supp. 497 (N.D. Ill. 1982) ........................................................................20

Almeida v. Holder,
    588 F.3d 778 (2nd Cir. 2009)...............................................................................9

Am. Honda Fin. Corp. v. City of Revere,
    471 F. Supp. 3d 399 (D. Mass. 2020) ............................................................15, 17

Am. Honda Fin. Corp. v. Twp. of Aston,
    --- F.Supp.3d ---, 2021 WL 2681289 (E.D. Pa. June 30, 2021)...........................8, 24

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)............................................................................................6

Barnett v. Harwood,
    189 F.3d 297 (2d Cir. 1999)................................................................................8

Bell v. Burson,
    402 U.S. 535 (1971)...........................................................................................15

Burns v. PA Dep't of Correction,
    544 F.3d 279 (3d Cir. 2008)...............................................................................24

Burton v. Wilmington Parking Auth.,
    365 U.S. 715 (1961)...........................................................................................16

Carey v. Piphus,
    435 U.S. 247 (1978)...........................................................................................22

City of Canton, Ohio v. Harris,
    489 U.S. 378 (1989)............................................................................................7

City of Monterey v. Del Monte Dunes at Monterey, Ltd.,
    526 U.S. 687 (1999)...........................................................................................22

Clement v. City of Glendale,
    518 F.3d 1090 (9th Cir. 2008) .......................................................................18, 20

Connecticut v. Doehr,
    501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991)..........................................8, 16

ii

Danielson v. Inslee,
    945 F. 3d 1096, 1100 (9th Cir. 2019) ...................................................................18

Delaware & Hudson Ry. Co. v. Consol. Rail Corp.,
    902 F.2d 174 (2d Cir. 1990)..............................................................................6

Dow Jones & Co. v. Harrods, Ltd.,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003)..........................24

Fasciana v. County of Suffolk,
    996 F. Supp. 2d 174 (E.D.N.Y. 2014) ...............................................................11

Ferrari v. Cty. of The Port Authority,
    845 F.3d 46 (2d Cir. 2016)................................................................................23

Ford Motor Credit Co. v. NYC Police Dep't,
    503 F.3d 186 (2d Cir. 2007)....................................................................7, 8, 23

Foster v. City of Philadelphia,
    No. CIV.A. 12-5851, 2014 WL 5821278 (E.D. Pa. Nov. 10, 2014) ........................21

Fuentes v. Shevin,
    407 U.S. 67 (1972)..............................................................................8, 14, 15, 21

Gomez v. Toledo,
    446 U.S. 635 (1980)..............................................................................................7

Graff v. Nicholl,
    370 F.Supp. 974 (N.D.Ill.1974) ........................................................................15

Harrell v. City of New York,
    138 F. Supp. 3d 479 (S.D.N.Y. 2015)......................................................... passim

Hernandez v. European Auto Collision, Inc.,
    487 F.2d 378 (2d Cir. 1973)..........................................................................16, 19

Hines v. City of Albany,
    542 F. Supp. 2d 218 (N.D.N.Y. 2008) ..............................................................12

HVT, Inc. v. Port Auth. of NY & NJ,
    No. 15-cv-5867(MKB)(VMS), 2018 WL 3134414 (E.D.N.Y. Feb. 15, 2018) .....................14

Illinois v. Caballes,
    543 U.S. 405 (2005).........................................................................................9, 13

Illinois v. McArthur,
    531 U.S. 326 (2001).............................................................................................9

Janus v. American Fed. Cnty of Munic. Enp.,
    942 F.3d 352, 367 (7th Cir. 2018) ........................................................18

Johnson v. Bradshaw,
    772 F. Supp. 501 (D. Nev. 1991), aff'd, 5 F.3d 537 (9th Cir. 1993) ........................16

Katona v. City of Cheyenne,
    686 F. Supp. 287, 295 (D. Wy 1988) ........................................................21

Kentucky Dept. of Corrs. v. Thompson,
    490 U.S. 454 (1989) ........................................................14

Kiethum v. Giammarinaro,
    148 F. Supp. 2d 219 (E.D.N.Y. 2001) ........................................................24

Koninklijke Luchtvaart Maatschaapij, N. V. v. United Techs. Corp.,
    610 F.2d 1052 (2d Cir. 1979) ........................................................23

Krimstock v. Kelly,
    306 F.3d 40 (2d Cir. 2002) ........................................................11

Los Angeles v. David,
    538 U.S. 715 (2003) ........................................................19

Manuel v. City of Joliet, Ill.,
    137 S. Ct. 911 (2017) ........................................................12

Marbury v. Madison,
    5 U.S. 137 (1803) ........................................................10

Mathews v. Eldridge,
    424 U.S. (1976) ........................................................14

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ........................................................6

Mays v. Scranton City Police Dept.,
    503 F. Supp. 1255 (M.D. Pa. 1980) ........................................................8, 20, 21, 22

Mennonite Bd. of Missions v. Adams,
    462 U.S. 791 (1983) ........................................................7

Monell v. Department of Soc. Svcs.,
    436 U.S. 658 (1978) ........................................................17

Price v. City of Junction, Tex.,
    711 F.2d 582 (5th Cir. 1983) ........................................................8, 15

Propert v. D.C.,
    948 F.2d 1327 (D.C. Cir. 1991) ..............................................................................14, 15

Robinson v. Concentra Health Servs., Inc.,
    781 F.3d 42 (2d Cir. 2015)...............................................................................................6

Rodriguez v. United States,
    575 U.S. 348 (2015)........................................................................................................13

Rosemont Taxicab Co. v. Philadelphia Parking Auth.,
    327 F. Supp. 3d 803 (E.D. Pa. 2018) .......................................................................11, 15

Saukstelis v. City of Chicago,
    932 F.2d 1171 (7th Cir. 1991) .........................................................................................7

Sheller v. City of Philadelphia,
    No. 11-cv-2371, 2012 WL 4754820 (E.D. Pa. Oct. 5, 2012) ................................21

Smith v. Insley's Inc.,
    499 F.3d 875, 880 (8th Cir. 2007) ................................................................................21

Sodal v. Cook Cnty., Ill.,
    506 U.S. 56 (1992)..........................................................................................................18

Stypmann v. City of San Francisco,
    557 F.2d 1338 (9th Cir.1977) ........................................................................................21

Tarantino v. Syputo,
    No. 03–03450, 2006 WL 1530030 (N.D. Cal. June 2, 2006) .................................21

Tedeschi v. Blackwood,
    410 F. Supp. 34 (D. Conn. 1976) .................................................................................21

United States v. Cardona-Sandoval,
    6 F.3d 15 (1st Cir. 1993) ...............................................................................................13

United States v. Jacobsen,
    466 U.S. 109 (1984).....................................................................................................9, 13

United States v. James Daniel Good Real Property,
    510 U.S. 43 (1993).....................................................................................................14, 23

United States v. Place,
    462 U.S. 696, 701 (1983).................................................................................................9

United States v VERTOL H21C, Reg. No. N8540,
    545 F.2d 648 (9th Cir. 1976) .........................................................................................11

United States v. Wilson,
  540 F.2d 1100 (D.C. Cir. 1976) ...................................................................12

West v. Atkins,
  487 U.S. 42 (1988) ......................................................................................16

Wholean v. CSEASEIU Local 2001,
  955 F.3d 322 (2d Cir. 2020) .......................................................................18

Zinermon v. Burch,
  494 U.S. 113 (1990) ....................................................................................15

**STATE CASES**

Fitzpatrick v. Bank of New York,
  124 Misc. 2d 732 (2d Dep't 1983) ..............................................................19

Mays v. Scranton City Police Dept.,
  503 F. Supp. 1255 (M.D. Pa. 1980) ............................................................20

Mtr. BMW Bank of North America v. G&B Collision Center, Inc.,
  46 A.D.3d 875 (2d Dep't 2007) ...................................................................19

Nissan Motor Acceptance Corp. v. All County Towing,
  161 A.D.3d 1423 (3d Dep't 2018) ...............................................................19

Sharrock v. Dell Buick-Cadillac, Inc.,
  45 N.Y.2d 152 (1978) ..................................................................................20

**FEDERAL STATUTES**

42 U.S.C. § 1983 .................................................................................... passim

**STATUTES**

N.Y. Lien Law § 184 ...........................................................................16, 19

N.Y. Penal Law § 165.05 .........................................................................16

N.Y. UCC § 9-609 ......................................................................................7

N.Y. Vehicle and Traffic Law § 1804 .................................................3, 19

**REGULATIONS**

Nassau County Administrative Code 8-120.2 (f) ........................................4

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................................6

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Fourth Amendment.................................................................. passim

U.S. Const. Fourteenth Amendment ........................................................... passim

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 766 (1979).................................................23

Restatement (Second) of Torts § 927 (1979).................................................23

Plaintiff, Santander Consumer USA, Inc. ("Santander"), respectfully submits this Memorandum of Law in support of its motion for summary judgment against Defendants, The County of Nassau ("Nassau") and C&R Automotive, Inc. ("C&R").

## PRELIMINARY STATEMENT

On January 17, 2020, Nassau and C&R took custody of a 2016 Nissan Rogue bearing VIN KNMAT2MT6GP703681 (the "Vehicle") in which Santander held a lien, without a warrant or other judicial order. Nassau sent a letter to Santander requiring payment of towing and storage fees to C&R, allegedly secured by C&R's possessory lien which allegedly took priority over Santander's pre-existing lien. Nassau sought to require Santander to pay for services C&R provided to Nassau. Nassau held no hearing relating to Nassau's seizure of the Vehicle, C&R's detention of the Vehicle, or the alleged subordination of Santander's lien priority. Instead, when Santander refused Nassau and C&R's unilateral demand for Santander's money, C&R conducted a non-judicial sale of the Vehicle, also unaccompanied by any hearing. These actions were all taken in accordance with Nassau's so-called "Boot and Tow Program."

The "Boot and Tow Program" is Nassau's written a policy for collecting traffic and parking tickets. When Nassau issues two or more traffic or parking tickets to a vehicle owner, and those tickets are not resolved to Nassau's liking, Nassau searches for the vehicle (or any other vehicle) owned by that person. Once found, the vehicle is taken into custody in exactly the manner advertised: the vehicle is immobilized with a mechanical "boot" on its wheel, and then "towed" away. The sole purpose of a "boot and tow" is to pressure payment of the allegedly delinquent tickets. The pressure comes from the inconvenience of losing the vehicle, along with the additional economic loss suffered due to the daily increasing costs for storage which Nassau authorizes its towing vendor to assert as a lien against a "booted and towed" vehicle.

Nassau's Boot and Tow Program is effectuated through a tripartite enterprise with two private companies, beginning with IPT, LLC ("Paylock"), which applies the "Boot" to initiate the physical seizure of the vehicle(s). Paylock sub-contracts with C&R to "tow" and detain the vehicle(s). Nassau confirms this relationship in the September 30, 2019 Boot and Tow Program manual, describing the "contract with [Paylock]" and the "towing and storage contractor. . . C&R." The most critical feature of this enterprise is the lack of monetary consideration paid by Nassau. The *only* consideration flowing from Nassau to C&R (through Paylock) is the mantle of Nassau's authority. If C&R towed a vehicle without the consent of the owner and demanded money for its return, it would be guilty of felony theft and extortion in the absence of Nassau's grant of Nassau's police power to legitimize the conduct. Nassau *solely* compensates C&R for the services C&R performs *for Nassau* by assisting in C&R's efforts to collect payment from *others*. Nassau's compensation to C&R is the creation of a possessory lien in favor of C&R, who (with Nassau's assistance) collects payment from *anyone* seeking to recover possession of a vehicle. The possessory lien attaches the moment C&R takes a vehicle into custody, and both Defendants assert that it takes priority over pre-existing liens like the one held by Santander.

In other words, Nassau's "Boot and Tow Program" requires innocent third parties to finance Nassau's debt collection activities against drivers who fail to pay parking or traffic tickets. Nassau does not obtain a warrant or judicial order before or after a "Boot and Tow" and accompanying re-arranging of the lien priorities. Nassau admits that it does not include any form of hearing as to the propriety of the towing, the detention of towed vehicles, or the creation of a possessory lien to secure C&R's towing and storage fees. Nassau does not explain why it is appropriate to conduct a warrantless seizure based on the accusation that someone owes it money, or why an innocent third-party should finance the towing and storage charges associated with that

2

illegal warrantless seizure. Nassau does not explain why it can alter the property rights in a vehicle without a hearing. Its actions are not consistent with Federal Constitutional principles, including the protection against unreasonable seizures and the protection of procedural due process.

C&R's reliance on a decades-old district court case along with a plea that it acted in "good faith" are ineffective. Nassau and C&R's seizure and detention of vehicles to force payment of unresolved parking and traffic tickets is expressly precluded by New York State Law—Vehicle and Traffic Law 1804—meaning neither Defendant can claim to have been acting in good faith in pursuing a policy that is expressly illegal. Both Defendants violated the protections guaranteed to Santander under the Fourth and Fourteenth Amendments to the United States Constitution.

The parties do not disagree on what happened to the Vehicle, nor the contents of the Defendants' regular policy and practices. The parties disagree solely on the legal consequences of these undisputed facts. For this reason, this is the quintessential summary judgment case, and Santander is entitled to summary judgment as a matter of law.

## STATEMENT OF FACTS

### I.    Nassau's "Boot and Tow" Policy

Nassau has a written policy governing its collection of traffic and/or parking tickets which is entitled "Nassau County Boot and Tow Program: Policy and Procedures." See Plaintiff's Statement of Material Facts in Support of Motion for Partial Summary Judgment ("SMF"), ¶ 31. This policy for collecting traffic and/or parking tickets does not include obtaining a warrant or Court order at any time with respect to the vehicles towed pursuant to Nassau's Boot and Tow Program. See SMF, ¶ 33. The policy also does not include affording a hearing before a neutral decision maker at any time relative to the propriety of the towing, detaining and disposal of vehicles taken into custody under that policy. Id. at ¶ 34.

Nassau effectuates its "Boot and Tow Program" through contracts with Paylock and Paylock's sub-contract with C&R. Id. at ¶¶ 10, 17-18. Through these contracts, Nassau outsources the day-to-day operations of its Boot and Tow Program. Id. at ¶ 25. To compensate C&R for providing towing and storage services to Nassau as part of Nassau's "Boot and Tow" program, the Nassau County Code authorizes a daily charge of $25.00 per day. Id. at ¶ 27 Specifically, Nassau County Administrative Code 8-120.2 (f) purports to make C&R's charges into a lien against a vehicle towed under the program. Id. When notifying persons with interests in vehicles seized under the program of the seizure—but not of a hearing, which are not held—Nassau informs these persons that Nassau requires payment to C&R in exchange for release of the seized vehicle. Id. at ¶¶ 49, 52, 56. Nassau's policy specifically dictates that a pre-existing lienholder's rights are subordinated to C&R's possessory lien for towing and storage fees. Id. at ¶ 52 (citing to letter which states that "**the county and the designated impound yard** will pursue all rights and remedies under the Lien Law. . . .") (emphasis added).

## II.    Nassau's Seizure and Detention of the Vehicle Pursuant to the Boot and Tow Policy

On and before January 17, 2020, Santander held the first priority duly perfect security interest and lien in the Vehicle and the security agreement. See SMF, ¶¶ 7, 9, 30. Before January 17, 2020, the debt secured by the lien was already in default, which was never cured. Id. at ¶ 9.

On January 17, 2020, C&R removed the Vehicle from its location pursuant to Nassau's Boot and Tow policy. Id. at ¶ 29. Nassau at all times followed its standard practices under its Boot and Tow Program with respect to the Vehicle. Id. at ¶ 37. Nassau did not obtain a warrant or Court order at any time with regard to the Vehicle. Id. at ¶ 38. Nassau did not arrange for a hearing before a neutral decision maker relating to the propriety of the towing, detention, application of a towing/storage lien, or auction of the Vehicle. Id. at ¶ 39.

4

On January 21, 2020, Nassau sent a letter to Santander stating that the Vehicle was being stored at C&R and that "storage fees will continue to accrue until the Vehicle is claimed." Id. at ¶¶ 48-49. On February 5, 2020, Nassau sent a letter to Santander stating that the Vehicle "has been seized by the County of Nassau for violations of the Vehicle and Traffic Law" and that the Vehicle "is incurring storage fees at a designated impound yard for the County" and "storage fees will continue to accrue." Id. at ¶¶ 50-52. Nassau conditioned release of the Vehicle upon Santander releasing Nassau and C&R from all claims relating to the towing of the Vehicle. Id. at ¶ 56. C&R charged storage fees of $25.00 per day for the Vehicle from the tow date of January 17, 2020. Id. at ¶ 53. C&R asserted a lien for its actions in towing and storing the Vehicle pursuant to Nassau's Boot and Tow policy for its towing and storage fees. Id. at ¶ 55.

Santander did not agree to Nassau's or C&R's conditions for release of the Vehicle. Id. at ¶¶ 57-58. On or about April 3, 2020, C&R scheduled a non-judicial lien sale to enforce the lien which it had impressed against the Vehicle for towing and storage fees and sent notice of such auction sale to Santander indicating the "amount owed" to be "$2,235.68." Id. at ¶ 59. After the filing of this lawsuit, on April 20, 2021, C&R released the Vehicle to Santander unconditionally to mitigate its damages. Id. at ¶ 60.

## III.    Damages

Santander's security agreement for the Vehicle calls for payment of $402.14 per month. Id. at ¶¶ 8, 62. Santander's agreement was already in default prior to Defendants' seizure of the Vehicle. Id. at ¶ 9. Santander was unable to repossess the Vehicle from January 17, 2020 to April 20, 2021, or just over 15 months. Id. at ¶ 61. The monthly payment amount, if calculated over the course of time the Vehicle was held by Defendants, would be $402.14x15=$6,032.10. Id.

## LEGAL ARGUMENT

I.    **Summary Judgment is warranted where there are no _genuine_ disputes of any _material_ fact, and where Plaintiffs are entitled to judgment as a matter of law.**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," see  Fed. R. Civ. P. 56(a), and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphases in original).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  A fact is material if it "might affect the outcome of the suit under the governing law." Id.

The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (internal citations and quotation marks omitted).  In other words, the opposing party "may not survive summary judgment merely by conjuring a hypothetical issue of material fact." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (internal citations and quotation marks omitted).  Rather, the party opposing such a motion must come forward with some admissible proof that would require a trial of the material questions of fact on which its claims rest. Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177-78 (2d Cir. 1990).

## II.    Santander is entitled to judgement as a matter of law under 42 U.S.C. § 1983.

Federal law provides a cause of action against any person acting under color of law who "subjects. . . any citizen of the United States . . . to the deprivation of any rights. . . secured by the Constitution . . . ." 42 U.S.C. § 1983.  The Supreme Court long ago held that:

> By the plain terms of § 1983, *two—and only two—allegations are required* in order to state a cause of action. . . .  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

Gomez v. Toledo, 446 U.S. 635, 640 (1980) (emphasis added).  In addition, for a municipal entity (like Nassau) to be held liable, a plaintiff must allege that a municipal policy or custom was the "moving force" behind the violation.  City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). (discussing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 693-94) (2000)

### A.    Defendants deprived Santander of constitutionally protected property interests in the Vehicle.

The Second Circuit has clarified that "[a] security interest is indisputably a property interest protected by the Fourteenth Amendment."  Ford Motor Credit Co. v. NYC Police Dep't, 503 F.3d 186, 191 (2d Cir. 2007); see also Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983).  A secured creditor has both the "contractual right to repayment of the debt owed **and** the property right to the collateral that secures the debt," specifically, in the "present value of a seized vehicle." Id.  Therefore, a municipality's "delays impair Ford Motor Credit's *property* right, which is in the collateral itself—the seized vehicle."  Id. (emphasis in original) (citations omitted).  A governmental seizure which denies a lienholder access to its collateral is therefore actionable as a deprivation of a protected property interest.

A lienholder's access to its collateral is guaranteed by its statutory right to repossess. See NY UCC § 9-609.  Booting deprives a lienholder of its access to the vehicle collateral.  Saukstelis v. City of Chicago, 932 F.2d 1171, 1172 (7th Cir. 1991) ("immobilization is a form of

deprivation"). Towing a vehicle away and detaining it behind a locked gate where no access is permitted deprives the lienholder of access to its collateral. Barnett v. Harwood, 189 F.3d 297, 300 (2d Cir. 1999). Providing C&R with a towing/storage lien also deprived Santander of its property right, *i.e.* its lien priority, by subordinating Santander's lien to C&R's lien. See, e.g., Connecticut v. Doehr, 501 U.S. 1, 12, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) ("our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."); Mays v. Scranton City Police Dept., 503 F. Supp. 1255, 1258 (M.D. Pa. 1980) ("the de facto creation of a mechanic's lien for towing and storage charges without notice or an opportunity for a hearing constituted a deprivation of property without due process"). As one District Court recently found:

> Honda's lien over the Accord was a protected property interest. . . . Aston's seizure and retention of the car impaired Honda's property interests, however, depriving Honda of the collateral for its lien while the collateral's value steadily depreciated. [Aston's towing contractor] Luongo's towing and storage fees also impaired Honda's interest by effectively subordinating the priority of the Company's lien.

Am. Honda Fin. Corp. v. Twp. of Aston, --- F.Supp.3d ---, 2021 WL 2681289, at *6 (E.D. Pa. June 30, 2021).

"If the property is seized, the deprivation would be final" where "[t]he ordinance deals with the seizure (or re-arranging) of private property." Price v. City of Junction, Tex., 711 F.2d 582, 590 (5th Cir. 1983). But even if the deprivation of Santander's rights was not permanent, "it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation'. . ." of property. Fuentes v. Shevin, 407 U.S. 67, 85 (1972); see also Doehr, 501 U.S. at 11-12. Even though Santander eventually recovered the Vehicle *after* filing suit, it was temporarily deprived of protected rights (for just over 15 months). Even a temporary delay in regaining possession of a vehicle constitutes a deprivation. Ford Motor Credit, 503 F.3d at 192.

**B.**    **Nassau Deprived Santander Of A Federal Right When It Unreasonably Seized the Vehicle.**

The Fourth Amendment of the United States Constitution prohibits unreasonable seizures. See U.S. Const. amend. IV.  There is no debate that booting and towing a vehicle is a seizure[1] which interfered with and denied Santander access to its collateral, the Vehicle.  At the time of the seizure, Santander's lien had already ripened into a present possessory right by virtue of a default on the under the terms of the contract and security agreement held by Santander.  See SMF ¶ 9.

"[S]eizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless. . . accomplished pursuant to a judicial warrant. . . .'" Illinois v. McArthur, 531 U.S. 326, 330 (2001) (quoting United States v. Place, 462 U.S. 696, 701 (1983)). There are limited exceptions to the warrant requirement.  Id.  An otherwise lawful warrantless seizure "can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition. . . ." Jacobsen, 466 U.S. at 113; see also Illinois v. Caballes, 543 U.S. 405, 407 (2005).

Nassau does not claim it had a warrant or judicial order equivalent of a warrant. See SMF at ¶ 38.  The analysis, then, is whether the Defendants' admittedly warrantless seizure fell within a recognized exception, Harrell v. City of New York, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015), and whether the manner of execution of that warrantless seizure was reasonable, Jacobsen, 466 U.S. at 113.  Neither are the case here.

---

[1] Defendants interfered with possessory interests in the Vehicle by taking it from the street.  United States v. Jacobsen, 466 U.S. 109, 113 (1984)("[a] 'seizure' of property occurs when there is some meaningful interference with the individual's possessory interest in that property."); Almeida v. Holder, 588 F.3d 778 (2nd Cir. 2009) (Meaningful interference includes interference with the right to exclude others from the property).

### i.  *Nassau's policy or custom of seizing vehicles because of unpaid traffic and/or parking tickets violates the Fourth Amendment.*

The reason that Nassau took custody of the Vehicle under its Boot and Tow Program was "outstanding parking violation notices of liability issued pursuant to any law authorizing photo or digital enforcement of the vehicle and traffic law or any local law, or any combination thereof." See Declaration of Edward Vargas, Ex. C.  Nassau's entire justification for the seizure of the Vehicle is that the Vehicle's owner allegedly owed Nassau unpaid traffic and/or parking tickets.

There is no recognized exception to the warrant requirement that allows seizure of a Vehicle because its owner is alleged to owe money for unadjudicated fines for traffic and/or parking infractions. The opposite is true.  District Judge Caproni made this very point:

> [New York] City has cited no case, and the Court has found none, in which a federal Court has ever upheld the warrantless seizure of private property in order to ensure payment of a fine, prior to any adjudication that the property owner committed any offence or that a fine is due.  Whatever the due process clause may mean in more complicated scenarios, surely it means the government cannot summarily seize property because a fine might be imposed at some point in the future by a neutral judicial officer.

Harrell v. City of New York, 138 F.Supp.3d 479, 494-95.

Here, Nassau does *not even* seize the Vehicle—as did New York City—because some neutral *may* impose a fine in the future; rather, it seizes the Vehicle purely to force the owner to pay the fine *without* judicial review.  Nassau has come forward with no argument, and certainly no evidence, that any recognized exception to the warrant requirement applies.  It cannot create an exception through its own local law.  Marbury v. Madison, 5 U.S. 137, 177 ("an act of legislature, repugnant to the constitution is void.").  This *alone* warrants a finding that Nassau's "Boot and Tow" program is unconstitutional as written insofar as it authorizes illegal warrantless seizures.

### ii. Nassau's policy or custom of demanding conditions as consideration for its return of possession of seized vehicles further violates the Fourth Amendment.

Absent a lawful justification, "retention of seized property runs afoul of the Fourth Amendment." Krimstock v. Kelly, 306 F.3d 40,50 (2d Cir. 2002).  In this regard, a warrantless seizure which is lawful at its inception may nevertheless violate the Fourth Amendment where the manner of its execution is unreasonable because there is no exception to the warrant requirement allowing the Vehicle to be detained.  Here, Nassau's policy or custom is to holding seized vehicles, including the Vehicle, solely to (a) utilize the hardship of seizure to force the owner to pay allegedly overdue parking and traffic fines, and (b) as security to ensure payment to C&R for the services C&R rendered to Nassau as part of its debt-collection activities.   Whether or not Nassau's *initial* seizure violated the Fourth Amendment, the manner of execution of that warrantless seizure further violated the Fourth Amendment.  As stated in Harrell:

> There is no question that regulating vehicles . . . is a legitimate exercise of police power. But summary deprivation of property is not. The City has powerful, legitimate tools at its disposal. It could subject these vehicles to forfeiture. . . it could impose substantial late fees for owners who do not pay the fines. . . . What it cannot do, consistent with the Fourth Amendment, is summarily seize property . . . and hold the property as leverage to ensure payment. . . .

138 F. Supp. 3d at 492.  See see also United States v VERTOL H21C, Reg. No. N8540, 545 F.2d 648, 651 (9th Cir. 1976) (noting that the government may not "summarily take property as a security"); Rosemont Taxicab Co. v. Philadelphia Parking Auth., 327 F. Supp. 3d 803, 822 (E.D. Pa. 2018) ("[s]eizing a taxicab solely as surety for the payment of fines that possibly may be assessed for a violation of [a municipality's] regulations" violated the Fourth Amendment.").

This Court has already directed neighboring Suffolk County to stop placing conditions on its release of vehicles which it decides not to subject to forfeiture.  Fasciana v. County of Suffolk, 996 F. Supp. 2d 174, 181 (E.D.N.Y. 2014) (stating the "[r]elease of the Vehicle *is not contingent on any condition, agreement, or circumstance*. . . . such a contingency would render Krimstock

a nullity.") (Emphasis added).  Other courts have found that indefinite detentions following a warrantless seizure violated the Fourth Amendment.  See Hines v. City of Albany, 542 F. Supp. 2d 218, 232 (N.D.N.Y. 2008) (denying motion to dismiss, citing Krimstock, and finding adequately pled Fourth Amendment illegal seizure claim where defendants were alleged to have "seized [the plaintiff's] vehicle without a warrant, retained possession of the vehicle for over one year despite repeated requests for its return, and failed to provide [the plaintiff] with a hearing.")

Nassau's explicitly conditioned release of the Vehicle to Santander upon an "agreement to release the County and the tow operator/tow yard," as well as payment to Nassau's towing sub-contractor, C&R, of the fees for the services C&R provided to Nassau.  The Vehicle was not evidence or contraband, and no forfeiture was filed or even contemplated.  Absent this lawsuit, the detention would have continued until the conditions were met or C&R permanently deprived Santander of its lien by auctioning the vehicle.  These actions render the ongoing detention of the Vehicle unreasonable under the Fourth Amendment.

###    iii.    *Nassau's policy or custom of giving vehicles to C&R as payment for C&R's services further violates the Fourth Amendment.*

Nassau's practice of compensating C&R by the immediate turnover of seized vehicles, including the Vehicle, also separately violates the Fourth Amendment.  "[O]nce its need for the property has terminated, [the Government] has. . . the duty to return the contested property. . . regardless and independently of the validity or invalidity of the underlying search and seizure." United States v. Wilson, 540 F.2d 1100, 1104 (D.C. Cir. 1976); see also Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 919 (2017) (finding Plaintiff's "ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights.").[2]  Here, Nassau's cession of control of the

---

[2] Joliet expressly overruled a line of Seventh Circuit cases which held the initial Fourth Amendment justification ended the inquiry.  See Joliet, 137 S. Ct. at 917 (noting the Seventh Circuit had been an "outlier" in holding the initial justification for the seizure ended the inquiry).

Vehicle to C&R—C&R's only compensation for the services it provided Nassau—violated the Fourth Amendment regardless of whether its initial seizure or detention was otherwise lawful.

For example, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Caballes, 543 U.S. at 408. Similarly, even where the initial seizure of a package was not unreasonable, the Supreme Court has required and analyzed an additional and separate justification for destroying a portion of the contents of the package (by doing a drug test), stating destructive test "converted what had been only a temporary deprivation of possessory interest into a permanent one." Jacobsen, 466 U.S. at 124. And in Rodriguez, the Supreme Court found that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures" when the police required a stopped vehicle to wait an extra *eight minutes* for an unrelated "dog-sniff." Rodriguez v. United States, 575 U.S. 348, 350 (2015); see also United States v. Cardona-Sandoval, 6 F.3d 15, 23 (1st Cir. 1993) (noting that a seizure's scope must comport with the reason for the seizure, and that an initially valid seizure does not "provide[] carte blanche to destroy" the item seized).

Nassau's turnover of the vehicle to C&R inexorably led to the destruction of Santander's lien priority in the Vehicle, because transferring possession purportedly created a priority lien in C&R's favor, and would ultimately have led to the complete destruction of Santander's property right through C&R's threatened lien sale. Because the loss of Santander's priority property rights was completely unrelated to any legitimate reason Nassau may have had to seize the Vehicle—to force payment of fines owed by someone other than Santander—the seizure was unreasonable in its execution, violating the Fourth Amendment.

**C.      Nassau Deprived Santander Of The Federal Right to Due Process Guaranteed By The Fourteenth Amendment.**

A Fourteenth Amendment claim has two elements: (1) whether there is a protected property interest, and (2), "whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dept. of Corrs. v. Thompson, 490 U.S. 454, 460 (1989). Santander satisfies the first stage, see § II(A), *supra*, and Nassau's no-hearing policy does not satisfy the second.

*i.      The absence of any hearing is* **per se** *unconstitutional.*

Nassau admits it has no procedure for any sort of hearing in conjunction with its Boot and Tow Program. See SMF at ¶ 34. This admission is fatal to the constitutional validity of Nassau's policy. HVT, Inc. v. Port Auth. of NY & NJ, No. 15-cv-5867(MKB)(VMS), 2018 WL 3134414, at *11 (E.D.N.Y. Feb. 15, 2018) ("this Court concludes that this concession is fatal  to the constitutional validity of Defendant's policy.").  "[I]ndividuals must receive notice and opportunity to be heard before the Government deprives them of property." James Daniel, 510 U.S. at 48 (citing Mathews v. Eldridge, 424 U.S. 319, 348-49 (1976)).  The government must set up a hearing regardless of the expected outcome.  Fuentes, 407 U.S. at 87.  All courts to have considered the process due when a vehicle is seized have uniformly required notice and a hearing. See Propert, 948 F.2d at 1332; see also  HVT, Inc., 2018 WL 3134414, at *9 ("[T]he question is whether Defendant can summarily deprive Plaintiff of its property without any opportunity for a hearing. The law is quite clear that it cannot.").  A no-hearing procedure fails the Mathews balancing test,[3] although there is no need to review in detail each of the Mathews factors.  "[T]he amount of process required can never be reduced to zero—that is, the government is never relieved

---

[3] The three factors are "'(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards; and (3) the government's interest,' including administrative burden that additional procedural requirements would impose."  Harrell, 138 F. Supp. at 493 (quoting Mathews, 424 U.S. at 335).

of its duty to provide. . . *some* opportunity to be heard prior to final deprivation of a property interest." Propert v. D.C., 948 F.2d 1327, 1332 (D.C. Cir. 1991); see also  Am. Honda Fin. Corp. v. City of Revere, 471 F. Supp. 3d 399, 409 (D. Mass. 2020) ("As Honda's opportunity for due process was in essence 'reduced to zero,' any interest Revere had in favor of the policy is moot.").

Santander's financial interest in this Vehicle was substantial.  See § II(A).  Nassau's interest in holding a seized vehicle as security for fines was minimal or nonexistent. See Bell v. Burson, 402 U.S. 535, 540 (government interest in security for desired payments is minimal); Harrell, 138 F.Supp.3d at 494 ("there is no legitimate government interest in seizing a vehicle because its owner *might* have violated a local law"); Rosemont, 327 F. Supp. at 827-28 (pre-deprivation procedures would not be overly burdensome).  Without any additional safeguards— there are currently *none*—there is an extremely high risk of erroneous deprivation.  Accordingly, the application of the Mathews test confirms that the Boot and Tow Program violates due process.

> ### ii.    *Nassau was required to provide a hearing __before__ giving the Vehicle to C&R and permitting C&R to assert a lien in the Vehicle.*

Nassau's failure to provide a hearing *at all* is particularly egregious, because the law required a hearing to occur *beforehand*.  Zinermon v. Burch, 494 U.S. 113, 132 (1990).  Where a vehicle does not pose an immediate threat to public safety which requires prompt action, "due process requires that notice and an opportunity for a hearing be accorded. . . ***prior to towing***." Graff v. Nicholl, 370 F. Supp. 974, 983 (N.D. Ill. 1974).  Post-deprivation notice is sufficient only in situations that are "truly unusual" and involve a "special need for prompt action." Fuentes, 407 U.S. at 90-91.  Seizure of a vehicle to coerce payment of overdue parking and traffic violations does not create a "truly unusual" situation or a "special need for prompt action."  Therefore, Nassau was required to provide a hearing *before* seizing the Vehicles.  Cf. Price, 711 F.2d at 590 (finding

statute sufficient only because it provided "a right. . . to notice and hearing before governmental action is taken under the statute" to remove vehicles).

Similarly, Nassau's Boot and Tow Policy expressly states that it compensates C&R by impressing a lien "pursuant to New York Lien Law § 184 . . . ." <u>See</u> Declaration of Edward Vargas, Ex. C, p. 2. There is no need for quick action in attaching a lien securing C&R's storage fees which purportedly supplants Santander's lien priority. Yet, Nassau immediately altered Santander's lien priority, subordinating it to C&R's, with no way for Santander to contest the loss. <u>Doehr</u>, 501 U.S. at 12 ("even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.").

### D.    Nassau and C&R's Actions were all Taken under Color of Law.

Section § 1983 liability attaches to actions taken under color of law. Both Nassau's actions and C&R's were taken under color of law. The fact that C&R is an independent contractor is irrelevant. <u>West v. Atkins</u>, 487 U.S. 42, 55-56 (1988). Sub-contracting "does not relieve the State [or Nassau] of its constitutional duty" to respect constitutional rights in the handling of seized vehicles. <u>Id.</u> Nassau also could not knowingly accept the benefit of C&R's conduct—<i>i.e.</i> C&R providing Nassau otherwise free services—and wash its hands of the consequences. <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715 (1961). Nassau's turnover of the Vehicle to C&R set in motion a chain of events[4] that led to C&R's alleged possessory lien on, and the eventual non-judicial sale of, the Vehicle. <u>Johnson v. Bradshaw</u>, 772 F. Supp. 501, 505 (D. Nev. 1991), <u>aff'd</u>, 5 F.3d 537 (9th Cir. 1993) (finding deprivation where "without notice to [plaintiff], it [the vehicle] was given by the police department to a third party."); <u>Hernandez v. European Auto Collision,</u>

---

[4] Without the mantle of Nassau's authority, C&R would have been committing a crime when it took someone else's property, sold it, and kept the proceeds. <u>See, e.g.</u>, N.Y. Penal Law § 165.05 (making it a crime where "[k]nowing that he does not have the consent of the owner," a person "takes, operates, exercises control over, rides in or otherwise uses a vehicle."). Of course, C&R was not committing a crime because of Nassau's involvement.

Inc., 487 F.2d 378, 383 (2d Cir. 1973) (finding a non-judicial sale of a vehicle under New York

State Lien Law to be "repugnant to the due process clause of the Fourteenth Amendment. . . .").

A Massachusetts District Court found the *exact* same arrangement as that between Nassau

and C&R to be unconstitutional when sanctioned by a state statute in Massachusetts. Am. Honda

Fin. Corp, 471 F. Supp.3d at 405. There:

> Revere does not reimburse the garages for any uncompensated losses, so by the
> time the Vehicle is sold, the sale proceeds are the only source of compensation and
> reimbursement available to garage owners. As a result, the garages treat the profits
> from the sales [of the Vehicles it tows] as reimbursement for their towing jobs.

Id. Many other cases hold both government and towing contractor liable. See §IV (B), *infra*.

### III.    There is no genuine dispute that Nassau is liable under *Monell*, because Nassau's policies and customs were the "moving force" behind the deprivations.

"Since this case unquestionably involves official policy as the moving force of the

constitutional violation," namely Nassau's Boot and Tow Policy, there is no genuine dispute as to

Nassau's liability. Monell, 436 U.S. at 694. Nassau and C&R both admitted that they followed

standard procedures as to the Vehicle under the Boot and Tow Program. See SMF at ¶¶ 37, 43.

### IV.    C&R's Defenses Based Upon Outdated Case Law Are Without Merit.

C&R's involvement with the Vehicle was not a random or isolated instance where it was

called out of the blue to tow a car. Rather, C&R's actions were taken as part of its regular practice

of participating in Nassau's Boot and Tow Program under a written contract that expressly

confirms C&R's role in facilitating Nassau's collection efforts. See Duston Declaration, Ex. 9.

Before signing the contract and agreeing to join "team Boot and Tow," C&R could reflect, study,

and seek legal counsel to evaluate the risks and rewards of becoming a key participant. C&R had

ample time to evaluate Nassau's unconstitutional debt-collection plan. C&R made the conscious,

informed choice to become an active participant in an enterprise designed to use non-judicial, self-

help tactics under color of law. It is liable under 42 U.S.C. § 1983.

A.    **The inapplicable private party good faith defense.**

C&R asserts it is entitled to the private party good faith defense to Section 1983 under the holding of Clement v. City of Glendale, 518 F.3d 1090 (9th Cir. 2008).  At the time Clement was decided in 2008, the good faith defense was undeveloped, and the Ninth Circuit found the towing company essentially deserved a free pass after having  "did its best to follow the law," by performing a tow that "appeared to be permissible under both local ordinance and state law."  Id. at 1097.  The Ninth Circuit recently clarified that the good faith defense applies in the rare situation where a party faces the possibility of being held retroactively liable for changing precedents on which it had relied.  Danielson v. Inslee, 945 F. 3d 1096, 1100 (9th Cir. 2019).  In fact, every Circuit Court has applied the private party good faith for the very narrow purpose of avoiding liability for changing precedents. See Janus v. American Fed. Cnty of Munic. Enp., 942 F.3d 352, 363-64; 367 (7th Cir. 2018) (collecting cases) (stating that "we emphasize again that the good faith defense to 1983 liability is narrow. . .").  Only last year, the Second Circuit strictly construed the defense to require a showing that the proponent of the defense relied upon "directly controlling Supreme Court precedent **and** a then-valid state statute[]. . . ." Wholean v. CSEASEIU Local 2001, 955 F.3d 322, 336 (2d Cir. 2020) (emphasis added); see also Janus, 942 F.3d at 367 ("We predict that only rarely will a party successfully claim to have relied substantially and in good faith on both a state statute and unambiguous Supreme Court precedent validating that statute.").

Here, C&R's liability is not founded on changing precedent, but rather C&R's willful participation in an ongoing enterprise that raised obvious constitutional and state law "red flags." For example, C&R's seizing of personal property to assist Nassau in collecting unpaid parking and traffic tickets has *neither* controlling Supreme Court precedent *nor* a valid state statute permitting the conduct.  In fact, a warrantless seizure executed in the civil context of the debtor/creditor relationship is a Fourth Amendment violation. Sodal v. Cook Cnty., Ill., 506 U.S. 56 (1992).  State

18

Law expressly precludes enforcement of penalties and forfeitures arising from parking or traffic tickets until after the person charged has been convicted or found liable.  NYS V&T Law § 1804.

C&R's imposition of a lien that allegedly supplants Santander's priority as payment for activity that Nassau County hired it to perform also violates state law.  The hearing-free alteration of Santander's property interests is contrary to Supreme Court precedent.  See § II, *supra*.  There is also no New York law that allows a towing company to impress a lien without prior notice to an existing lienholder, and the assertion of an improper lien claim constitutes conversion.  Mtr. BMW Bank of North America v. G&B Collision Center, Inc., 46 A.D.3d 875, 876 (2d Dep't 2007).  Nassau is (at best) a co-creditor of Santander's, and even if Nassau was levying on a judgment—which it is not—it could not supplant the priority of Santander, a co-creditor.  Fitzpatrick v. Bank of New York, 124 Misc. 2d 732, 733 (2d Dep't 1983).

C&R's detention of property under color of law without any hearing also violates Federal and State law.  When personal property is detained, a hearing must be afforded within a reasonable time.  See Los Angeles v. David, 538 U.S. 715 (2003).  The "Boot and Tow" program is founded on a lien claim originating under the police power.  See, e.g., Declaration of Edward Vargas, Ex. C (referencing "towing and storage fees pursuant to New York Lien Law § 184"); see also N.Y. Lien Law § 184 (relating to towing and storage "at the request of a law enforcement officer").  New York law conditions that statutory lien on the tower sending a very specific notice.  Nissan Motor Acceptance Corp. v. All County Towing, 161 A.D.3d 1423, 1425 (3d Dep't 2018).  The "Boot and Tow" policy does not involve compliance with these requirements.

C&R's non-judicial lien sale of the Vehicle to enforce its towing and storage lien—allegedly amounting to $2,235.68—is also not authorized by Supreme Court precedent, and violates Second Circuit precedent that such a sale violates dues process.  Hernandez, 487 F.2d at

19

383; see also § II, *supra*.  New York's highest court has also expressly held that such a sale violates due process.  Sharrock v. Dell Buick-Cadillac, Inc., 45 N.Y.2d 152 (1978).

Each of C&R's acts do not meet the requirements of the "good faith" defense.  Contrasting with Clement, where the court noted "[t]he company did its best to follow the law" and that its actions "appeared to be permissible under both local ordinance and state law," C&R's conduct is exactly the opposite.  Clement, 518 F.3d at1097.  C&R entered into a contract with Nassau that guaranteed C&R would violate both state and federal law at every turn.  C&R made no attempt to comply with state law, instead solely following its illegal contract with Nassau.  C&R cannot point to any precedent that allows any of its conduct, nor can it identify any change in precedent that created an unexpected liability.  The good faith defense is not available or applicable to C&R.

### B.    The inapplicable Mays argument.

C&R also argues that it should not be held accountable for any violation of federal rights based upon the forty-one year old decision of Mays v. Scranton, wherein the Court found that a towing company had not caused the deprivation.  503 F. Supp. at 1064.  Mays holding in this regard is inapplicable for several reasons.

First, it is simply wrong to state that C&R was "not in a position to provide the procedural avenue by which the vehicle may be released."  Id.  Every single person in the entire country has a mechanism for providing procedural due process to collect fees allegedly owed for anything (including towing and storage fees): a civil action in an appropriate court.  Moreover, "[n]o one forces the tower to accept the economic benefits the Ordinance makes available to it," in this case, a warrantless seizure and due-process free possessory lien.  Addante v. Vill. of Elmwood Park, 541 F. Supp. 497, 498 (N.D. Ill. 1982).  Rather the tower "could simply refuse to tow a vehicle if due process has not been accorded the owner. If it does not, there is no unfairness in requiring it

to bear the burdens together with the benefits of the Ordinance." Id. C&R's reliance on Mays to suggest that C&R had no control over the provision of due process is nonsense.

Second, Mays relied on the fact that the tower was only "concern[ed] with the validity of the tow," which in Mays appeared to be legal. Id. By contrast, the entire "Boot and Tow" program is illegal under both state and federal law. See § II & IV(A), *supra*. "There is an important difference between Mays and the case before the Court. The present case challenges not just the hearing, ***but the constitutionality of the tow itself*** and the imposition of towing costs." Sheller v. City of Philadelphia, No. 11-cv-2371, 2012 WL 4754820, at *5 (E.D. Pa. Oct. 5, 2012) (emphasis added). The Second Circuit and District Courts have repeatedly held that warrantless seizures unaccompanied by notice and a hearing violated the Constitution. See, e.g. Tedeschi v. Blackwood, 410 F. Supp. 34, 41 (D. Conn. 1976) (stating the conclusion was "inescapable" that "the defendants (including Road Aid, of course) acted 'under color of law.'"). *No* Circuit Court has followed the reasoning of Mays, and numerous District Courts have rejected it or reached the opposite conclusion. Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007) ("[W]e find that Smith has established the threshold section 1983 requirement that Insley's [towing] was acting under color of state law in towing, storing, and selling his vehicle"); Stypmann v. City & Cty. of San Francisco, 557 F.2d 1338, 1341 (9th Cir. 1977)("the private towing company is a willful participant"); Tarantino v. Syputo, No. 03–03450, 2006 WL 1530030, at * 7 (N.D. Cal. June 2, 2006) ("[T]owing companies are deemed to be state actors because they tow vehicles in response to orders by law enforcement officials. . . ."); Foster v. City of Philadelphia, No. CIV.A. 12-5851, 2014 WL 5821278, at *22 (E.D. Pa. Nov. 10, 2014) ("Century Motors is a state actor for § 1983 purposes. . . ."). Similarly, C&R foreclosed on its lien, unlike the defendant in Mays. Katona v.

City of Cheyenne, 686 F. Supp. 287, 295 (D. Wy 1988) (distinguishing Mays where, as C&R did here, "Pat's Towing foreclosed its lien on the car. . . .").

Third, Mays was decided in 1980, only a few years after the seminal decision in Fuentes laid the groundwork for due process in the context of vehicle seizures. The tower in Mays might not have been on notice that its actions were questionable, but C&R has 41 years' worth of precedent since even Mays itself put C&R on notice that "the de facto creation of a mechanic's lien for towing and storage charges without notice or an opportunity for a hearing constituted a deprivation of property without due process." Id. at 1258. And over 14 years ago, the Second Circuit spoke directly about the process owed to lienholders in Ford Motor Credit Co., 503 F.3d at 191. C&R played an integral role in the deprivation by asserting its own lien to collect its own fees and in attempting to sell the Vehicle by non-judicial sale.

Thus, C&R directly responsible for the deprivation (even under Mays).

## V.     Santander's Damages.

"[T]he denial of procedural due process should be actionable for nominal damages without proof of actual injury." Carey v. Piphus, 435 U.S. 247, 266 (1978). However, here, Santander requests damages of $6,032.10, representing the contract payment of $402.14 multiplied by the approximately 15 months during which time the Vehicle was detained without Santander's consent. The Court can award compensatory damages because 42 U.S.C. § 1983 creates a species of tort liability where the damages are measured by reference to State tort law. City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687 (1999) (stating that "42 U.S.C. § 1983 creates a species of tort liability" and the court interprets "the statute in light of the background of tort liability."); Carey, 435 U.S. at 257-58 (stating that "the common law of torts" is the "starting point for the inquiry under § 1983").

22

A lienholder's interest in a seized motor vehicle is "considerable," and includes the income stream derived from its contractual and security rights. Ford Motor Credit, 503 F.3d at 194 (2d Cir. 2007) (citing James Daniel Good Real Prop., 510 U.S. at 54); see also Ferrari v. Cty. of The Port Authority, 845 F.3d 46, 65 (2d Cir. 2016) (noting that a party "may also have a financial interest in a vehicle apart from its use by the owner himself—including an interest derived from the rental value of the property"). There are two torts that relate to the impingement of Santander's rights in its collateral: interference with contract and conversion.[5] The remedy for interference with a contract is the "pecuniary loss resulting to the [plaintiff] from the failure of the third person[6] to perform the contract." Restatement (Second) of Torts § 766 (1979). The remedy for conversion includes "the value. . . at the time and place of the conversion," *and* "any further pecuniary loss of which the deprivation has been a legal cause" and "not otherwise compensated." Restatement (Second) of Torts § 927 (1979).

The Second Circuit has previously found that reference to New York cases computing the loss of use damages for vehicles involved in accidents is relevant to the broader question of loss of use damages of a vehicle (or, in that case, an airplane). Koninklijke Luchtvaart Maatschapij, N. V. v. United Techs. Corp., 610 F.2d 1052, 1055-56 (2d Cir. 1979). It found that New York law looked to the "[r]ental value [to] provide a measure of loss of use damages even though a substitute vehicle has not actually been hired. . .," which may be measured not by "the rental value. . . of the hypothetical substitute, but of the damaged vehicle itself during its time of idleness. . . ." Id. The

---

[5] Santander does *not* need to prove the elements of these torts. The purpose here is to determine the appropriate measure of damage *after* the Court has determined liability under 42 U.S.C. § 1983, *not* add elements to Santander and VW Credit's substantive 42 U.S.C. § 1983 claim, of which there are only two. See *supra*.

[6] Santander is not alleging Defendants caused the customer's breach; however, had Santander recovered the Vehicle, it would have auctioned the Vehicle and used the proceeds to take assignment of another, performing loan.

Second Circuit further found that the "lease payments" of the damaged aircraft (or vehicle) could be used as a "rough and ready" measure of the value of lost use of a vehicle.

Although <u>Koninklijke</u> case involved a leased plane, the holding is directly applicable.  This Court should follow the same logic as <u>Koninklijke</u>: no proof of *actual* loss of use or lost profits is necessary, but the Court can instead estimate damages from the retail installment contract at issue here (*i.e.* lost use damages of $402.14 per month).  See also <u>Kiethum v. Giammarinaro</u>, 148 F. Supp. 2d 219, 226 (E.D.N.Y. 2001) (Proof of damages to a mathematical certainty is not required); <u>see also</u> <u>Burns v. PA Dep't of Correction</u>, 544 F.3d 279, 284 (3d Cir. 2008) (permitting "compensation for the time" the property rights were "operat[ing] under a cloud.").

## VI.    <u>Santander's Request For Declaratory Relief.</u>

As the Southern District stated in 2002:

> To guide the district courts in exercising the broad discretion the DJA confers, several tests and considerations have been recognized and generally applied. One articulation holds that a court may properly render declaratory judgment (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

<u>Dow Jones & Co. v. Harrods, Ltd.</u>, 237 F. Supp. 2d 394, 432 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003).  Here, Nassau's "Boot and Tow" policy, along with the manner it compensates C&R through the parties' ongoing contract (through Paylock), create an ongoing controversy every time the Defendants seize a vehicle subject to a lien.  Santander brought this action to require Nassau County to "afford greater due process protections to lienholders whose vehicles" Nassau and C&R have "seize[d] and impound[ed]," and, as recently held by the Eastern District of Pennsylvania, "[g]iven the frequency with which vehicles are leased or purchased on credit (with a lien usually provided to the financing entity), this is not an obscure issue."  <u>Am. Honda Fin. Corp. v. Twp. of Aston</u>, No. 20-cv-3267, 2021 WL 2681289, at *1 (E.D. Pa. June 30, 2021).

Therefore, the declaration of the parties' respective rights will guide Nassau in formulating a policy that is ***not*** violative of lienholders' constitutional rights, and would settle this ongoing issue.

The Court can and should issue a declaration of the parties' respective rights in this case, declaring unconstitutional the policy of (a) not obtaining a warrant or judicial order before the seizure of a vehicle on the basis the vehicle's owner is liable for parking or traffic tickets; (b) not providing for any hearing (to lienholders) before or after a seizure, and (c) compensating C&R by grant of a lien which allegedly supplants a pre-existing lienholder's priority without a hearing.

## **CONCLUSION**

Nassau's Boot and Tow Policy is premised upon the theory that if someone is not paying a traffic and/or parking ticket, a good way to get their attention is to grab their vehicle and hold it until they pay.  Nassau also believes it is appropriate to foist the cost of this heavy handed debt collection activity on an innocent, pre-existing creditor with a lien in the seized vehicles, like Santander.  Surely this heavy-handed tactic is appealing because it is effective in collecting fines and fees, but it runs afoul of the Fourth and Fourteenth Amendments.  C&R voluntarily, and for their own profit, participated in and actively furthered Nassau's unconstitutional activities.

Santander therefore respectfully requests that this Court enter an order granting partial summary judgment on Counts I and III against all Defendants, awarding damages in the amount of $$6,032.10, and entering the requested declaratory relief.

Dated: December 6, 2021

**NORRIS McLAUGHLIN P.A.**

By: ___*/s/ Nicholas Duston*_____
        Nicholas A. Duston, Esq.
        naduston@norris-law.com
        *Attorneys for Plaintiff, Santander Consumer USA, Inc.*

<u>**CERTIFICATION**</u>

Nicholas A. Duston, an attorney duly admitted to practice law in the Courts of the State of New York, certifies that the total word count in the above affirmation, excluding the recognized exceptions, is 10,089 and the word count was the product of the word processing system used to prepare this document.

**NORRIS McLAUGHLIN P.A.**

By: <u>    */s/ Nicholas Duston*                </u>
Nicholas A. Duston, Esq.
7 Times Square, 21st Fl.
New York, NY 10036
(908) 252-4208
naduston@norris-law.com
*Attorneys for Plaintiff, Santander Consumer USA, Inc*

1