UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANTANDER CONSUMER USA, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>THE COUNTY OF NASSAU, C&R AUTOMOTIVE, INC. AND MICHAEL SCHMELTZER,<br><br>    Defendants. | Case No.  20-cv-04790<br><br>**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL <u>SUMMARY JUDGMENT</u>** |

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiff, Santander Consumer USA, Inc. ("Santander"), by its undersigned counsel, respectfully submits the following statement of material facts as to which there is no genuine issue to be tried.

**<u>Parties</u>**

1.      Santander is in the regular business of financing vehicles and retaining first priority liens in those vehicles. <u>See</u> Declaration of Edward Vargas ("Santander Decl."), ¶ 2.

2.      Defendant The County of Nassau ("Nassau") is a municipal corporation organized and existing under the laws of the State of New York. <u>See</u> Duston Decl., Ex. 2, Nassau's Answer, ¶ 14.

3.      C&R Automotive, Inc. ("C&R Automotive") is a corporation organized and existing under the laws of the State of New York and operating as a business engaged in the towing and storage of motor vehicles.  <u>See</u> Duston Decl., Ex. 3, C&R Automotive's Answer, ¶ 15.

4.      Michael Schmeltzer is a citizen of the State of New York and the owner and person responsible for the practices and decisions made by C&R Automotive.  <u>See</u> Duston Decl., Ex. 3, C&R Automotive's Answer, ¶ 16.

**Ownership of the Subject Vehicle**

5.     On or about September 25, 2018, Melissa Jenkins ("Jenkins") purchased a 2016 Nissan Rogue with vehicle identification number KNMAT2MT6GP703681 (the "Vehicle").  See Santander Decl., Ex. A, Santander_00004-00005.

6.     Jenkins financed the purchase of the Vehicle, and the retail installment contract was thereafter assigned to Santander. See Santander Decl., Ex. A, Santander_00004-00005.

7.     As of about October 17, 2018, Santander held the first priority duly perfected lien in the Vehicle. See Santander Decl. ¶ 7 and Ex. B, Santander_00006.

8.     Santander's security agreement for the Vehicle calls for payment of $402.14 per month. See Santander Decl., Ex. A, Santander_00004-00005.

9.     As of June 6, 2019, Jenkins was in payment default under the terms of the contract and security agreement held by Santander, which default was never cured. See Santander Decl., ¶ 8.

**Contract Between Nassau, Paylock and C&R Automotive**

10.    Nassau has a contract with non-party IPT LLC d/b/a Paylock. See Duston Decl., Ex. 10, NC000101-NC000115.

11.    The Paylock Contract states that Paylock "is in the business of providing parking enforcement services" and that Nassau "desires that Paylock provide the [such] services." See Duston Decl., Ex. 10, NC000102.

12.    The Paylock Contract requires Paylock to provide to Nassau, among other things:

   a. Devices "to immobilize vehicles identified in Nassau County's enforcement policy."

   b. "Staff to identify and immobilize targeted vehicles."

   c. An operator available 24/7 to answer questions from immobilized motorists and to process payments for "fees and parking fines and/or penalties," "[i]ntegration of its

       BootView Software systems with COUNTY ticket processing and/or court system(s) to communicate data to receive lists of vehicles eligible for immobilization daily and update payment data."

d. Training of Nassau's personnel on use of all related hardware and software used by Nassau.

e. "Design and supply vehicle seizure notices that will be affixed to booted vehicles at the time of immobilization."

f. "Apply On-Vehicle Notices to vehicles owing delinquent parking and red light camera violations that are not boot-eligible."

g. Collect fines and fees on behalf of Nassau and deposit same into an account designated by Nassau.

h. "All services as procured by Nassau County FP TV04118-1114 entitled 'Vehicle Immobilization Services' which is" incorporated into the Paylock Contract by reference.

See Duston Decl., Ex. 10, NC000102-03.

13. Section 6.1 of the Paylock Contract authorizes Paylock "to regularly patrol Nassau County public areas to identify and immobilize scofflaw vehicles." See Duston Decl., Ex. 10, NC000106.

14. The amount Paylock is permitted to charge for immobilization, towing, storage and other services are set by Nassau in Section 11.2 of the Paylock Contract. See Duston Decl., Ex. 10, NC000109.

15. Section 15(c) of the Paylock Contract acknowledges that Paylock's records in Nassau's possession are subject to disclosure under Article 6 of the New York State Public Officer's Law ("Freedom of Information Law"). See Duston Decl., Ex. 10, NC000112.

16. The Paylock Contract creates an exclusive relationship between Nassau and Paylock for the services contemplated under the agreement. See Duston Decl., Ex. 10, NC000103.

17. Paylock has a contract with defendant C&R Automotive (hereafter, the "C&R Automotive Contract" and together with the Paylock Contract, the "Contracts"). See Duston Decl., Ex. 9, NC000085-NC000100.

18. The C&R Automotive Contract provides that "in order to fulfill [Paylock's] obligations to the County [of Nassau] under the Prime Contract [between Paylock and Nassau], [Paylock] desires to engage [C&R Automotive] to perform work in the area of towing and impoundment of motor vehicles." See Duston Decl., Ex. 9, NC000085.

19. Section 6(a) of the C&R Automotive Contract states that C&R Automotive is required to tow vehicles identified by Paylock "as County policy may dictate." See Duston Decl., Ex. 9, NC000086.

20. Section 6(b) of the C&R Automotive Contract states that the procedure C&R Automotive must following with respect to "storing, disposing and determining ownership of impounded vehicles will meet all county and state laws and policies." See Duston Decl., Ex. 9, NC000087.

21. Section 6(r) of the C&R Automotive Contract provides that C&R Automotive's employees may be required "to attend training courses provided by the County [of Nassau], at no cost to such employees, covering such professional conduct." See Duston Decl., Ex. 9, NC000090.

22. Section 6(r) of the C&R Automotive Contract requires C&R Automotive to provide a list of its employees assigned to work under the C&R Automotive Contract to Nassau and to inform Nassau within three (3) days of any changes to the list. See Duston Decl., Ex. 9, NC000090.

23. Section 12 of the C&R Automotive Contract gives Nassau full access to C&R Automotive's books and records "maintained or retained by or on behalf of [Paylock]" pursuant to the agreement. See Duston Decl., Ex. 9, NC000093.

24. The Contracts governed the relationship between Nassau and Paylock and C&R Automotive on January 17, 2020. See Duston Decl., Ex. 4, Nassau Interrogatory Response No. 11.

25. Pursuant to the Contracts, Nassau outsources day-to-day operations of its Boot and Tow policy to private companies. See generally the Contracts.

26. Nassau determines the conditions under which a vehicle may be released when someone claims it and the conditions under which a vehicle may be disposed of if a vehicle is not claimed. See Santander Decl., Ex. C, Santander_00001-00002.

27. To compensate the private companies that conduct the towing and storage aspect of the Boot and Tow program, Nassau authorizes a daily charge of $25.00 per day beginning on the day following the towing date. To assist in the recovery of such charges, Nassau enacted a local law, Nassau County Administrative Code 8-120.2 (f), purporting to make such charges into a lien against a vehicle towed under the program. See Nassau County Admin. Code 8-120.2.

**Seizure of the Subject Vehicle**

28. On January 15, 2020, the Vehicle was "booted," meaning a device was attached to one wheel which prevented the Vehicle from being moved by the driver. See Duston Decl., Ex. 7, NC000015-NC000021.

29. On January 17, 2020, the Vehicle was towed by C&R. See Duston Decl., Ex. 5, Admit Answer 4, and Ex. 7, NC000015-NC000021.

30. On January 15 and January 17, 2020, Santander held the first priority duly perfect security interest and lien in The Vehicle. See Santander Decl. ¶ 7 and Ex. B, Santander_00006.

**Defendants' Policies and Procedures**

31. Nassau has a written policy governing its collection of traffic and/or parking tickets which is entitled "Nassau County Boot and Tow Program: Policy and Procedures" ("Nassau's

Boot and Tow policy"). See Duston Decl., Ex. 4, Interog. Answer 5; Duston Decl, Ex. 6, NC000001-000012.

32. Nassau has no additional unwritten policy for collecting traffic and/or parking tickets. See Duston Decl., Ex. 4, Interog. Answer 8.

33. Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not include obtaining a warrant or Court order at any time with respect to The Vehicles towed pursuant to Nassau's Boot and Tow Program. See Duston Decl., Ex. 5, Admit Answer 19.

34. Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not include affording a hearing before a neutral decision maker at any time relative to the propriety of the towing of a vehicle under that policy. See Duston Decl., Ex. 5, Admit Answers 10 and 21.

35. Nassau's Boot and Tow policy for collecting traffic and/or parking tickets does not afford a hearing before a neutral decision maker at any time relevant to the propriety of Nassau allowing a private entity to assert a lien against a vehicle towed under that policy. See Duston Decl., Ex. 5, Admit Answer 21.

36. Nassau's Boot and Tow policy for collecting traffic tickets and/or parking tickets does not afford a hearing at any time relative to Nassau's demand for a release of liability as a condition for release of a vehicle that has been towed under that policy. See Duston Decl., Ex. 5, Admit Answer 21.

37. Nassau at all times followed its standard practices under its Boot and Tow Program with respect to The Vehicle (except that Nassau requested that The Vehicle be held and not auctioned). See Duston Decl., Ex. 4, Interrog. Answer 21.

38. Nassau did not obtain any warrant or judicial order with regard to the Vehicle. See Duston Decl., Ex. 4, Interrog. Answer 18.

39. Nassau did not arrange for a hearing before a neutral decision maker relating to the propriety of the towing of the Vehicle. See Duston Decl., Ex. 5, Admit Answer 9.

40. During the year of 2020, Nassau enforced its policy for collecting traffic and/or parking tickets with the assistance of a company called "IPT, LLC d/b/a Paylock" pursuant to the Paylock Contract. See Duston Decl., Ex. 8, NC000057-000084.

41. During the year of 2020, Paylock provided the services required under its contract with Nassau in part through the assistance of C&R Automotive pursuant to the C&R Automotive Contract. See Duston Decl., Ex. 9, NC000085-000100.

42. The C&R Automotive Contract was signed by Michael Schmeltzer on behalf of C&R Automotive. See Duston Decl., Ex. 7, NC000099.

43. C&R Automotive at all times followed its written policy and regular custom, policy and practice with respect to The Vehicle. See Duston Decl., Ex. 11, Interrog. Answer 9.

**Nassau's Seizure and Detention of the Vehicle Pursuant to the Boot and Tow Policy**

44. On January 17, 2020, the Vehicle was removed from its location by C&R Automotive pursuant to Nassau's Boot and Tow policy for collecting traffic and/or parking tickets. See Duston Decl., Ex. 5, Admit Answer 4.

45. Nassau did not arrange for a hearing before a neutral decision maker relating to the turnover of the Vehicle to C&R Automotive. See Duston Decl., Ex. 5, Admit Answer 20.

46. Nassau did not arrange for a hearing before a neutral decision maker relating to the fees associated with recovering the Vehicle. See Duston Decl., Ex. 5, Admit Answer 24.

47. Nassau did not arrange for a hearing before or neutral decision maker relative to Nassau's demand for a release as a condition for a release of the Vehicle. See Duston Decl., Ex. 5, Admit Answer 20.

**January 21, 2020 Letter**

48.     On January 21, 2020, Nassau sent a written communication to Santander (the "January Letter"). See Santander Decl., Ex. C, Santander_00001.

49.     The January Letter notified Santander that the Vehicle had been "immobilized and removed" and was being stored at C&R Automotive and that "storage fees will continue to accrue until the vehicle is claimed." See Duston Decl., Ex. 5, Admit Answer 23; Santander Decl., Ex. C.

**The February 5, 2020 Letter**

50.     On February 5, 2020, Nassau sent a written communication to Santander (the "February Letter"). See Duston Decl., Ex. 5, Admit Answer 29; Santander Decl., Ex. D, Santander_00003.

51.     The February Letter states that the Vehicle was "seized by the County of Nassau for violation of the Vehicle and Traffic Law." See Santander Decl., Ex. D, Santander_00003.

52.     The February Letter states that the Vehicle:

> is incurring storage fees at a designated impound yard for the County. If you do not respond to this letter within ten (10) days, the county and the designated impound yard will pursue all rights and remedies under the Lien Law of the State of New York. Please note that storage fees will continue to accrue until the date the vehicle is reclaimed or disposed of.

See Santander Decl., Ex. D, Santander_00003.

**Charges and Fees**

53.     C&R Automotive purported to charge storage fees of $25.00 per day for the Vehicle from the tow date of January 17, 2020. See Duston Decl., Ex. 12, C&R Automotive response to production 00003.

54.     C&R Automotive purported to charge Santander a $130 tow charge. See Santander Decl., Ex. F, Santander_00034.

55. C&R Automotive asserted a lien, for its actions in towing and storing the Vehicle pursuant to Nassau's Boot and Tow policy, of $148.21 for towing and storage at $25.00 per day. See Duston Decl., Ex. 12, C&R Automotive response to production 00002.

56. Nassau conditioned release of the Vehicle upon Santander releasing Nassau and C&R Automotive from all claims relating to the towing of the Vehicle. See Duston Decl., Ex. 5, Admit Answer 25.

57. Santander did not agree to Nassau's conditions for release of the Vehicle. See Santander Decl., ¶ 14.

58. Santander did not agree to C&R Automotive's conditions for release of the Vehicle. See Santander Decl., ¶ 15.

**Notice of Lien and Sale**

59. In April 2020, C&R Automotive sent a written Notice of Lien and Sale to Santander scheduling the auction sale of the Vehicle to enforce its lien claimed for towing and storage fees, which auction was scheduled to occur on April 29, 2020. See Santander Decl., ¶ 12 and Ex. E.

**Recovery of the Vehicle**

60. On April 20, 2021, after the filing of this lawsuit, C&R released the Vehicle to Santander unconditionally to mitigate its damages. See Duston Decl., Ex. F, Santander_00008.

**Damages**

61. Santander was unable to repossess the Vehicle from January 17, 2020 to April 20, 2021, or just over 15 months. See *supra*, ¶¶ 42, 57.

62. The monthly payments under the retail installment contract are $402.14. See Santander Decl., Ex. A, Santander_00004-00005.

63. The monthly payment amount, if calculated over the course of time the Vehicle was held by Defendants, would be $402.14x15=$6,032.10. See Duston Decl, ¶ 13.

64.

Dated: New York, NY
December 6, 2021

**Norris McLaughlin, P.A.**

By:   /s/ Nicholas Duston
      Nicholas A. Duston
      7 Times Square, 21st Floor
      New York, NY 10036
      212-808-0700
      naduston@norris-law.com
      *Counsel for Plaintiff*