## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

SANTANDER CONSUMER USA, INC.,

                Plaintiff,

  -against-

THE COUNTY OF NASSAU, C&R
AUTOMOTIVE, INC. AND MICHAEL
SCHMELTZER,

                Defendants.

Case No. 20-cv-04790 (AMD/SIL)

## SANTANDER'S MEMORANDUM OF LAW IN REPLY TO NASSAU'S OPPOSITION AND IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**NORRIS McLAUGHLIN P.A.**
Nicholas A. Duston, Esq.
7 Times Square, 21st Fl.
New York, NY 10036
(908) 252-4208
naduston@norris-law.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

    I.       Nassau's policy includes the requirement that Santander pay C&R's bill, an action for which Nassau is the moving force and, therefore, liable........................ 2

    II.     Nassau's policy of seizing vehicles to enforce unadjudicated accusations of driving violations is not a recognized exception and violates the Fourth Amendment......................................................................................................... 3

    III.    Nassau's "No Hearing" policy is unconstitutional *Per Se* ..................................... 6

    IV.    Nassau's Mootness Defense is Without Merit.................................................... 10

CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

Alexandre v. Cortes,
    140 F.3d 406 (2nd Cir. 1998).........................................................................................9

Am. Honda Fin. Corp. v. City of Revere,
    471 F. Supp. 3d 399 (D. Mass. 2020) .......................................................................8, 9

Am. Honda Fin. Corp. v. Twp. of Aston,
    --- F.Supp.3d ---, 2021 WL 2681289 (E.D. Pa. June 30, 2021).................................3

Armstrong v. U.S.,
    364 U.S. 40 (1960).....................................................................................................9

Bell v. Burson,
    402 U.S. 535 (1971)................................................................................................6, 9

City of Canton, Ohio v. Harris,
    489 U.S. 378 (1989)...................................................................................................3

Connecticut v. Doehr,
    501 U.S. 1 (1991).....................................................................................................6, 7

Craig v. Carson,
    449 F. Supp. 385 (M.D. Fla. 1978)...........................................................................8

DeCastro v. City of New York,
    278 F. Supp.3d 753 (S.D.N.Y. 2017).........................................................................5

Ford Motor Credit Co. v. NYC Police Dep't,
    503 F.3d 186 (2nd Cir. 2007)...............................................................................2, 4, 9

Frier v. City of Vandalia, Ill,
    770 F.2d 699 (7th Cir. 1985) .....................................................................................7

Fuentes v. Shevin,
    407 U.S. 67 (1972)....................................................................................................1

Grosz v. Museum of Modern Art,
    772 F. Supp.2d 473 (S.D.N.Y. 2010).........................................................................7

Harrell v. City of New York,
    138 F. Supp. 3d 479 (S.D.N.Y. 2015)......................................................................3, 5

Henry v. City of Middletown,
    655 Fed. App'x 451 ..................................................................................................8, 9

Johnson v. City of Evanston, Ill.,
    250 F.3d 560 (7th Cir. 2001) ............................................................9

Los Angeles v. David,
    538 U.S. 715 (2003) ........................................................................8

McClendon v. Rosetti,
    460 F.2d 111 (2d Cir. 1972).............................................................7

Propert v. D.C.,
    948 F.2d 1327 (D.C. Cir. 1991) ....................................................10

South Dakota v. Opperman,
    428 U.S. 364 (1976)........................................................................4

Sutton v. City of Milwaukee,
    672 F.2d 644 (7th Cir. 1982) ..........................................................3

Tate v. District of Columbia,
    627 F. 3d 904 (D.C. Cir. 2010) ...................................................4, 5

Taylor v. City of Saginaw,
    922 F.3d 328 (6th Cir. 2019) ..........................................................6

U.S. v. Jeffers,
    342 U.S. 48 (1951)..........................................................................6

U.S. v. Perea,
    986 F.2d 633 (2nd Cir. 1993)..........................................................4

United States v. WT Grant Co.,
    345 U.S. 629 (1953)......................................................................10

Uzuegbunam v. Preczewski,
    141 S. Ct. 792 (2021)....................................................................10

**STATE CASES**

Gen Motors Acceptance v. Stotsky,
    60 Misc.2d 451 (1969) ....................................................................4

HVT, Inc. v. All County Towing and Recovery,
    166 AD 3d 1441 (3d Dep't 2018) ...................................................7

Matter of Gen. Motors v. Maloney,
    46 Misc.2d 251 (1965) ....................................................................4

SK Global Am., Inc. v. John Roberts, Inc.,
    6 AD 3d 179 (1st Dep't 2004) ........................................................4

Swain v. Brown,
    135 A.D.3d 629 (1st Dept. 2016)...................................................................7

## STATUTES

N.Y. Veh. & Traf. Law § 1224 ......................................................................4

NY Lien Law § 184 ..................................................................................3, 6

NY UCC § 9-609 ...........................................................................................4

[NY] State Lien Law § 184 subd. 5 ..............................................................2

NY V&T § 1804 .............................................................................................5

## CONSTITUTIONAL PROVISIONS

Fourth Amendment ................................................................................ passim

Fourteenth Amendment ...............................................................................10

Santander Consumer USA, Inc. ("Santander") submits this memorandum in opposition and reply to the opposition/cross-motion by Defendant, the County of Nassau ("Nassau ").

## PRELIMINARY STATEMENT

Nassau's Boot and Tow Policy is a modern day incarnation of the summary, *ex parte* attachment process that was struck down as unconstitutional 50 years ago in Fuentes v. Shevin, 407 U.S. 67 (1972). Except it is worse. Here, Nassau seized a vehicle in which it admits it has no property interest based upon unadjudicated minor traffic infractions issued by a robotic camera, and then held the vehicle hostage to force an innocent party, Santander, to pay for the costs of Nassau's hostage taking process. Specifically, Nassau's summary seizure of a one vehicle was based upon Nassau's computerized accusation that drivers of two separate vehicles registered to Melissa Jenkins did not come to a full stop at various times at red light traffic signals. As a result, Nassau issued three "red-light camera" tickets based upon the operation of one car and four "red-light camera" tickets based upon the operation of the other car. When the tickets remained unresolved (and unadjudicated) Nassau went in search of vehicle to seize. Nassau ultimately found one of them—the subject 2016 Nissan Rogue (the "Vehicle")—where it was lawfully parked in a public parking space. Nassau had the Vehicle booted and towed away to force Jenkins to pay.

While due process is flexible as to the *form* of a hearing, there can never be no hearing at all. To justify its untenable "no hearing" policy, Nassau argues it had a hearing "on paper" when it insisted Santander comply with Nassau's unilaterally imposed conditions to retrieve the Vehicle. Nassau's policy is ***not*** a hearing, on paper, in person, or otherwise. Nassau sent a list of demands with which Santander was absolutely required to comply, or else it would forever lose the Vehicle. Santander had no possibility of challenging the propriety or applicability of any of Nassau's demands. No neutral will ever review the demands. The word for this is "coercion," not "hearing."

1

Nassau also argues that Santander's interests are entitled to very minimal constitutional regard. This, too, is wrong. At least 3 of Nassau's demands required Santander to relinquish valuable rights: (1) a release to Nassau and C&R, (2) protection of Nassau from lawsuits by Ms. Jenkin, and (3) money to cover C&R's bill. The Second Circuit has already called a lienholder's property interest in the present value of a seized Vehicle "considerable." Ford Motor Credit Co. v. NYC Police Dep't, 503 F.3d 186, 194 (2nd Cir. 2007). Nassau immediately and irrevocably impinged Santander's interest in the Vehicle, because Santander was left with no choice but to part with (a) its collateral (the Vehicle), or (b) or its money and other rights. By contrast, Nassau's interests in making Jenkins pay (literally) was slight, at best.

No material fact is genuinely disputed. Nassau does not claim that its actions in seizing and impounding the Vehicle were mistaken or unauthorized. Rather, Nassau staunchly asserts that everything that it did with the Vehicle, including withholding the Vehicle unless and until Santander paid C&R, happened exactly as it should have under Nassau's regular policy. Accordingly, the Court should grant Plaintiff's motion for Summary Judgment.

**I.    Nassau's policy includes the requirement that Santander pay C&R's bill, an action for which Nassau is the moving force and, therefore, liable.**

Nassau incorrectly argues that Nassau is not the cause of C&R's lien. See Opp'n Br., pp. 14-15. In doing so, Nassau also incorrectly implies that its intrusion on Santander's rights were minimal by implying that Nassau merely moved the Vehicle without significantly altering Santander's rights. See, e.g., Opp'n Br., p. 11 ("plaintiff had the ability to retrieve the Vehicle within days. . . with minimal impact to the value of the Vehicle and, consequently, no material impact on plaintiff's security interest."). But Nassau cannot claim that "[t]he relative lien priorities. . . . is [sic] governed by [NY] State Lien Law §184 subd. 5" as though a statue is a sentient actor participating in the "Boot and Tow" of the Vehicle while Nassau innocently stood

by to watch.  Id. (citing NY Lien Law §184).  C&R would not have a lien[1] under that statute unless it "tows and stores a motor vehicle at the request of a law enforcement officer. . . ."  Here, the "law enforcement" was Nassau County, and C&R only towed the Vehicle because it was told to, so that Nassau could leverage payment from Ms. Jenkins.  Nassau was the "moving force" behind the subordination of Santander's lien priority, and Nassau caused this serious deprivation of Santander's rights.  City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989); see also Am. Honda Fin. Corp. v. Twp. of Aston, --- F.Supp.3d ---, 2021 WL 2681289, at *6 (E.D. Pa. June 30, 2021).

## II.    Nassau's policy of seizing vehicles to enforce unadjudicated accusations of driving violations is not a recognized exception and violates the Fourth Amendment.

Nassau admits it's policies trample *someone's* Fourth Amendment rights by admitting it "has not sought to either take ownership of the Vehicle, keep the Vehicle for evidence or" sell the Vehicle, Opp'n Br., p. 11, because these are the only legitimate reasons it could conduct a warrantless vehicle seizure. Harrell v. City of New York, 138 F. Supp. 3d 479, 491 (S.D.N.Y. 2015) (discussing seizures as "the first step in a process to terminate a possessory interest" and that seizures are improper where a municipality did not "believe. . . even temporarily" that it had "a superior claim to the vehicle than its owner.").  A warrantless seizure of a legally parked car to force payment of previously-incurred tickets is the taking of a "hostage." Sutton v. City of Milwaukee, 672 F.2d 644, 648 (7th Cir. 1982).  That is what happened here.

First, Nassau misleadingly claims for the first time[2] that the Vehicle was "abandoned" and removed under the "community caretaking" warrant exception.  See Opp'n Br., p. 12 (quoting South Dakota v. Opperman, 428 U.S. 364, 368 (1976)).  What Nassau really means is that, after

---

[1] Nassau tellingly is also the one who sets the amount of that lien by setting the storage charges C&R is permitted to charge.  See Dec. 6, 2021 Duston Decl., Ex. 5, p. 6 (Nassau RFA Resp. No. 17).

[2] Nassau's responses to Santander's interrogatories stated that this vehicle was seized *solely* because of the "red light camera" violations, and does not mention any abandonment.  See Dec. 6, 2021 Duston Declaration, Exhibit 4, Interrogatory No. 1 (stating the vehicle was seized because of "outstanding notices of violation and or liability.")

applying a "boot" to an ***unoccupied*** Vehicle,[3] it then had C&R tow the Vehicle after Ms. Jenkins did not comply with Nassau's demands.  See Opp'n Br., p. 1 ("Ms. Jenkins did not take the steps necessary to release the boot. . . and abandoned the Vehicle. . . ."); Opp'n Br., p. 11 ("immobilized in a public parking lot").  This is called an "ex parte attachment," not an "abandoned" vehicle.

Second, Nassau argues that Santander "had no possessory interest" in the Vehicle and cannot raise a Fourth Amendment challenge.  See Opp'n Br., p. 17.  This, too, is wrong.  A lienholder has the immediate right to possession upon default.  NY UCC § 9-609.  This right can be enforced against a third-party in possession, including other creditors like Nassau.[4] SK Global Am., Inc. v. John Roberts, Inc., 6 AD 3d 179, 180 (1st Dep't 2004)("a secured party's right to possession. . . upon default may be asserted against a third party in possession. . . .").  Nassau does not dispute that Santander's security agreement was in default *before* Nassau seized the Vehicle. See Opp'n Br., p. 12.[5] Thus, Santander had the superior right to possess the Vehicle, had the right to exclude all others from possession, and was protected by the Fourth Amendment.  U.S. v. Perea, 986 F.2d 633, 639-640 (2nd Cir. 1993).  The booting of the Vehicle instantly interfered with Santander's possessory interest.  Indeed, that is the very point of the boot: it places absolute control over the Vehicle in the hands of the government.  Likewise, the towing and placement of the Vehicle behind a locked gate interfered with Santander's right to repossession.

Third, Nassau suggests that it may be saved by the forfeiture exception to the warrant requirement.  See Opp'n Br., p. 17 (citing Tate v. District of Columbia, 627 F. 3d 904 (D.C. Cir.

---

[3] For the Vehicle to have truly been "abandoned" while legally parked, it would have to remain unattended for over 48 hours "after the parking of such vehicle shall have become illegal."  N.Y. Veh. & Traf. Law § 1224.

[4] The lienholder's right to possession upon default is superior to judgment creditors who have levied on the Vehicle. Matter of Gen. Motors v. Maloney, 46 Misc.2d 251, 252; Gen Motors Acceptance v. Stotsky, 60 Misc.2d 451,453. Even if Nassau had turned its tickets into a judgment, (which it did not) Santander would still hold the superior possessory interest. Ford Motor Credit, 503 F.3d at 191-192 (2nd Cir. 2007) (The government's rights by reason of seizing a vehicle can raise no higher than the owner's interest in the property)

[5] This case is distinguishable from those discussing lienholder's possessory rights *purely by virtue of holding a lien*.

2010)).  This proposition is defeated by Nassau's own admission that it never intended to forfeit the Vehicle or otherwise acquire any interest in the Vehicle. <u>See</u> Opp'n Br., p. 11 ("The County has not sought to either take ownership of the Vehicle, keep the Vehicle for evidence or reap the benefit of the proceeds of a sale.").  In <u>Harrell</u>, the court discussed that forfeiture exception does not justify a warrantless seizure when the seizing authority does not intend (or cannot legally) commence a forfeiture action.  In fact, Nassau *could not have* ever intended to forfeit the Vehicle for unadjudicated tickets issued for "red-light camera" violations, which would be prohibited by law.  <u>See</u> NY V&T § 1804.[6]  Thus, Nassau cannot claim to have been justified in seizing the Vehicle under the forfeiture exception to the warrant requirement. <u>DeCastro v. City of New York</u>, 278 F. Supp.3d 753, 772 (S.D.N.Y. 2017) (plaintiff is entitled to summary judgment on the Fourth Amendment claim where there is not probable cause to believe a vehicle is subject to forfeiture).

Nassau admits that there was no urgency, no concern for public safety, and no need to safeguard the Vehicle because they located the Vehicle "in a public parking lot;" Nassau admits that the Vehicle is not contraband, evidence, or subject to forfeiture; and Nassau admits it does not have judgments[7] on which to execute. <u>See</u> Opp'n Br., p. 11.  There is therefore no justification for Nassau's failure to obtain a warrant before seizing the Vehicle.  Where (as here) prior review is not impractical, the Fourth Amendment requires there be some prior review:

> The City points to the importance of "maintaining efficient, orderly parking." While the City is entitled to maintain efficient orderly parking, the manner in which it chooses to do so is not without constitutional limitation. As the Supreme Court

---

[6] Vehicle and Traffic Law § 1804 applies to all violations under Chapter 71 "Vehicle & Traffic" and the "red-light camera" authorizing Sections, 1111 (d) and 1111-b, are found within Chapter 71 at Title 7, Article 24. Notably, Section 1111-b (f) dictates that issuance of a ticket is "not deemed a conviction" and adjudication is required by the court having jurisdiction over the traffic infraction.

[7] A judgment can be a warrant equivalent because it is made after an impartial review by the Judicial Branch. This exception is irrelevant to this matter, because Nassau admits it seized the Vehicle solely to secure unadjudicated claims which had not been reduced to a judgment. <u>See</u> <u>Harrell</u>, 138 F. Supp.3d at 492.  Even if it had judgments against Jenkins, Nassau's ticketing process does not include notifying lienholders, who are kept entirely in the dark.

5

explains. "the [Fourth] Amendment does not place an unduly oppressive weight on [the government] but merely. . . an orderly procedure. . ."

Taylor v. City of Saginaw, 922 F.3d 328, 336 (6th Cir. 2019) (quoting U.S. v. Jeffers, 342 U.S. 48, 51 (1951)); see also Bell v. Burson, 402 U.S. 535, 540 (1971).

## III. Nassau's "No Hearing" policy is unconstitutional *Per Se*

Nassau's Boot and Tow Policy is most analogous to a prejudgment summary attachment which the Supreme Court has held ***must be preceded by*** a meaningful attachment hearing. Connecticut v. Doehr, 501 U.S. 1, 12 (1991). Nassau acknowledges that its Boot and Tow Policy does not afford any hearing whatsoever. Nassau urges the Court to adopt a doctrine that no hearing is required as long as the Vehicle is offered back to a lienholder ***if*** the lienholder complies with unilaterally imposed, unchallengeable, unreviewable conditions asserted by the seizing authority. Nassau succinctly summarizes its position by asserting:

> The County is willing to turn over the Vehicle to plaintiff upon proof of entitlement to possession under the security agreement and asks only that it deliver a release of claims to protect it and the tow yard from an adverse claim which would only come from the use of the Vehicle and pay what may be required by the tow yard pursuant to New York State Lien Law § 184.

See Opp'n Br., pp. 17-18. This is an admission of liability.[8] The Court can stop at this sentence and grant Santander's motion without further examination: Nassau takes property, affords no hearing, and refuses to return it unless Nassau is provided items of substantial value: (1) a release; (2) indemnity from adverse lawsuits by Ms. Jenkins; and (3) the towing fees due C&R.

First, over 50 years ago, the Second Circuit held that where the government does not need to hold seized property, the government must return it, and a policy that places the burden of taking action to recover the property on the claimant is a *per se* due process violation. McClendon v.

---

[8] It is also an admission that Nassau had control over the Vehicle all along, and not C&R Automotive, revealing that this case is not really about traffic control at all, but rather about making one innocent citizen—Santander—pick up the check for the towing and storage services C&R rendered to Nassau in its debt collection efforts against Jenkins.

Rosetti, 460 F.2d 111, 116 n.4 (2d Cir. 1972) ("It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury.")(citation omitted); see also Frier v. City of Vandalia, Ill, 770 F.2d 699, 701 (7th Cir. 1985) (holding that after an automobile is towed the government must "tender an opportunity for a hearing; it may not sit back and wait for the aggrieved person to file a suit.").

Second, the attachment of conditions to the potential release of detained property constitutes a refusal to release that property, which refusal epitomizes the need for impartial review. Swain v. Brown, 135 A.D.3d 629, 632 (1st Dept. 2016)(stating a "refusal" to release property occurs when the holder of that property conditions release of the property upon "payment of storage fees."). A "refusal" also occurs when release is conditioned upon providing non-monetary items such as a police release form. HVT, Inc. v. All County Towing and Recovery, 166 AD 3d 1441, 1442 (3d Dep't 2018). A refusal need not use the word "refuse" so long as the holder intends to interfere with the claimant's possession. Grosz v. Museum of Modern Art, 772 F. Supp.2d 473, 783-484 (S.D.N.Y. 2010). Nassau admits that under its policy, it demanded Santander provide a release of liability, protect Nassau from lawsuits by Jenkins, and pay "towing and storage fees" to recover the Vehicle. See Opp'n Br., p. 4. These unchallengeable conditions are called a "refusal," not a "willing[ness] to turn over the Vehicle." See Opp'n Br., p. 17.

Third, Nassau's imposition of conditions impairs Santander's property rights by forcing Santander to relinquish one form of property—money, a release, and an indemnity—in exchange for another—the Vehicle. Every court to have considered the issue has rejected the practice of holding a Vehicle to secure payment without any hearing. Doehr, 501 U.S. at 12 ("[O]ur cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."); Los Angeles v.

David, 538 U.S. 715 (2003) (Where money is paid as a condition to recover a towed vehicle, a hearing must be afforded as to the validity of that condition within a reasonable time).

One District Court accurately said this practice presented the holder of an interest in the Vehicle with "the proverbial Hobson's choice:  he must pay the charges assessed . . . or forfeit his car," but "[u]nder either alternative, the owner is compelled to relinquish his personal property. . . without an opportunity to dispute the loss."  Craig v. Carson, 449 F. Supp. 385, 395 (M.D. Fla. 1978); see also Am. Honda Fin. Corp. v. City of Revere, 471 F. Supp. 3d 399, 405 (D. Mass. 2020) (finding violative of due process an arrangement where a municipality "does not reimburse the garages" and, instead, the garage "profits from the sales" of seized vehicles); Henry, 655 F. App'x at 464 ("[A] City's custom and practice of disposing of vehicles seized under these circumstances and not claimed by payment . . . without offering any post-impoundment process, violates Due Process.").  Nassau complains that Santander could have complied with its unilaterally-imposed, unchallengeable conditions sooner by paying C&R and retrieving the Vehicle, but this argument was disposed of 44 years ago by Craig, which said if a purported "hearing" procedure is "merely of a fait accompli" because "assessment of charges . . . [and] the creation of a lien against the car for those charges . . . are all final, unilateral, irrebuttable, and unalterable actions," then there has been no due process. Craig, 449 F. Supp. at 395.

In truth, Nassau demanded valuable consideration from Santander in the form of a release, indemnity, and money, and afforded no opportunity for any sort of hearing at any time.[9]  Nassau's attempt to justify this unconstitutional position by its Mathews analysis crumbles quickly.  The first of the Mathews test factor favors Santander as Santander's interest in the Vehicle is

---

[9] Nassau's musing that a "paper hearing" could suffice is immaterial because the process that Nassau describes does not actually provide any ability to challenge Nassau's conditions; Nassau's "paper" is a list of demands, not an invitation to seek neutral review of its actions.  This is called "coercion," not a "hearing."

considerable. <u>Ford Motor Credit Co. v NYC Police Dep't</u>, 503 F.3d 186, at 194). Nassau's interest in this particular property, the Vehicle, is non-existent, by its own admission. <u>See</u> Opp'n Br., p. 11 ("The County has not sought to either take ownership of the Vehicle, keep the Vehicle for evidence or reap the benefits of the proceeds of a sale of the Vehicle."). Nassau's interest in using the duress of seizure to extract payment from Jenkins is minimal at best. <u>Bell</u>, 402 U.S. at 540. Moreover, Nassau has gone far beyond the legitimate governmental interest in enforcing traffic tickets by using seized vehicles to compensate C&R for the services C&R rendered to Nassau.[10] Using others' property to compensate C&R is not a legitimate government objective. <u>Armstrong v. U.S.</u>, 364 U.S. 40, 49 (1960) (stating the Constitution "was designed to bar Government from forcing some people alone to bear public burdens which. . . should be borne by the public as a whole."); <u>Am. Honda Fin. Corp. v. City of Revere</u>, 471 F. Supp. 3d 399, 405 (D. Mass. 2020).

The second Mathews factor favors Santander because deprivations of property without any form of hearing necessarily makes the risk of erroneous deprivation high. <u>Henry v. City of Middletown</u>, 655 Fed. App'x 451, 463, 464. The already high risk is made ultra-high by the fact that the "red light camera" tickets are unadjudicated accusations ***made by a machine***. No human has reviewed the accusation at all, much less a neutral one. And the third of the <u>Mathews</u> factors brings that ultra-high risk into a certitude of erroneous deprivation, because no matter how weighty the government interest may be, "the amount of process requirement can never be reduced to zero. . ." <u>Propert v. D.C.</u>, 948 F.2d 1327, 1332 (D.C. Cir. 1991). Additional safeguards would be minimally burdensome on Nassau, which currently provides none.

---

[10]  Indeed, Nassau's act of giving the Vehicle to C&R as a form of payment without any opportunity for a hearing alone violates dues process. <u>Alexandre v. Cortes</u>, 140 F.3d 406, 412 (2nd Cir. 1998); <u>Johnson v. City of Evanston, Ill.</u>, 250 F.3d 560, 562 (7th Cir. 2001)( "The Constitution's requirements are as applicable to the police when they choose sides in in a dispute among citizens as when they seize evidence for use in criminal prosecutions.").

## IV.    <u>Nassau's Mootness Defense is Without Merit</u>

Nassau claims that the declaratory aspect of case is moot because Santander recovered the Vehicle.  However, to assert a mootness defense Nassau has the "heavy" burden of showing that "there is no reasonable expectation that the wrong will be repeated." <u>United States v. WT Grant Co.</u>, 345 U.S. 629, 633 (1953).  Far from meeting this burden, Nassau believes that its Boot and Tow practices are absolutely lawful, and Nassau makes it quite clear that it fully intends to continue them. Thus, there is no mootness defense.  <u>See also</u> <u>Uzuegbunam v. Preczewski</u>, 141 S. Ct. 792 (2021) (pleading nominal damages avoids mootness as to actual damages).

## <u>CONCLUSION</u>

Nassau's policy is to use its police power to summarily seize property to force citizens to pay attention to theretofore ignored accusations of traffic violations.  Nassau's policy includes forcing innocent persons to pay for the costs of this heavy-handed tactic.  There is no doubt this debt-collection policy must work efficiently and conveniently for Nassau, but it does not comply with the hearing requirement of the Fourteenth Amendment, or the requirements of the Fourth Amendment. Constitutional safeguards must be adhered to, even if Nassau finds them inconvenient.  The undisputed facts entitle Santander to Summary Judgment as a matter of Law.

Dated: February 16, 2022

NORRIS McLAUGHLIN P.A.
*Attorneys for Plaintiff*

By:     */s/ Nicholas Duston*
Nicholas A. Duston, Esq.
7 Times Square, 21st Fl.
New York, NY 10036
(908) 252-4208
naduston@norris-law.com

10