UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
SANTANDER CONSUMER USA, INC.,                    :

                Plaintiff,                    :

                                  :   **MEMORANDUM DECISION AND**

             - against -                    :   **ORDER**

THE COUNTY OF NASSAU,                    :   20-CV-4790 (AMD) (SIL)

                Defendant.                    :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

    On October 6, 2020, the plaintiff filed a complaint against the defendant Nassau County, asserting claims under 42 U.S.C. § 1983 and the New York constitution, and for declaratory relief.[1]  Before the Court are the parties' cross-motions for partial summary judgment.  (ECF Nos. 30, 32.)  For the reasons explained below, the plaintiff's motion is granted in part, and the defendant's motion is denied.

## BACKGROUND

    The plaintiff challenges Nassau County's system for targeting "scofflaws"—drivers who have two or more unpaid traffic tickets.  As explained more fully below, the defendant contracted with Paylock, which is authorized to patrol the county, run license plates to identify scofflaws, and "boot"[2] their cars.  Paylock in turn contracted with C&R Automotive, Inc. ("C&R Automotive"), which tows and impounds the cars.  The county's policy does not require its agents or contractors to get a warrant or court order before seizing vehicles.  Nor is there any

---

[1] The plaintiff also filed a complaint against the defendants C&R Automotive, Inc. and Michael Schmeltzer.  Those parties stipulated to dismissal with prejudice on February 22, 2022.  (ECF No. 35.)

[2] A "boot" is a device that immobilizes a car.

provision for a hearing at which a registered owner or lienholder can challenge the seizure of the vehicle.  The plaintiff is the lienholder of a vehicle seized pursuant to this policy.

Section 8-120.2 of the Nassau County Administrative Code, entitled "Immobilization and Removal of Illegally Parked Vehicles and Vehicles of Scofflaw," authorizes the Nassau County Police Department to "boot" and tow away illegally parked vehicles and the "vehicles of scofflaws," which are defined as:

> [V]ehicles . . . [a]gainst which two (2)[] or more tickets, warrants, summonses or fines for parking violations or two (2)[] or more notices of liability issued pursuant to any law authorizing photo or digital enforcement of the vehicle and traffic law or any local law . . . have been issued and are delinquent or any other vehicles owned by a person, corporation or other concern who also owns a vehicle subject to immobilization or removal . . . .

Nassau Cnty. Admin. Code § 8-120.1.  The police department may contract with a private company to handle immobilizing, removing and storing vehicles.  *Id.* § 8-120.2(e).  Section 8-120.2(f) provides that "[a]ll sums due for delinquent parking tickets and all fees for immobilization or removal shall be a lien on any vehicle so immobilized or removed.  On or after the fifteenth business day following the immobilization or removal of a vehicle . . . , such vehicle shall be subject to levy upon execution of a judgment."[3]  In practice, C&R Automotive asserts liens on vehicles that it tows and impounds.

Section 8-120.5 directs the police department and Nassau County Traffic and Parking Violations Agency (the "TPVA") to "develop procedures necessary to effectuate the purposes and provisions of this title," including establishing the fees that the police department or its contractor may charge for immobilization, removal and storage.  The defendant has a written policy governing the collection of traffic and parking tickets entitled "Nassau County Boot and

---

[3] The defendant does not address section 8-120.2(f), but says that it "asserts no claim on behalf of itself to the Vehicle and takes no position on the towing company's entitlement under New York's Lien Law [§ 184]."  (ECF No. 32-8 at 1-2.)

Tow Program: Policy and Procedures" (the "Boot and Tow Policy"). (Pl. 56.1 ¶ 31; ECF No. 30-16.) According to the policy, the defendant has a contract with "non-party IPT LLC d/b/a Paylock" (Pl. 56.1 ¶¶ 10-11), and pursuant to that contract, Paylock "regularly patrols County public areas utilizing a mobile license plate recognition system" to identify scofflaw vehicles. (ECF No. 30-16 at 2.) Paylock contracts with C&R Automotive, which tows and impounds targeted vehicles. (*Id.*)

When the defendant issues two or more traffic or parking tickets to a vehicle and the owner does not resolve those tickets, the defendant or Paylock searches for that owner's vehicle and places a boot on it; the defendant's definition of "scofflaw" permits the immobilization and removal of any vehicle owned by someone with two or more outstanding tickets, even if the vehicle was not involved in the underlying traffic or parking violations. (ECF No. 30-1 at 1; ECF No. 30-16 at 2.) The vehicle can be towed if the owner does not try to get the boot removed within 48 hours. (ECF No. 30-16 at 2.) Within two days of the tow, the TPVA sends a written notice to the titled vehicle owners and any known lienholders or lessors. The defendant's policy requires that the notice include the following information:

(i) Location of the vehicle;

(ii) Reason for the tow;

(iii) The scofflaw's ability to obtain the release of such vehicle upon payment of the outstanding fines, immobilization, and towing/storage fees; and

(iv) The scofflaw's option to post a bond, as provided by Section 8-120(ii)(b) of the Administrative Code.

(*Id.* at 3-4.) The notice also explains how a lienholder can obtain the release of a vehicle, and describes the documentation that the lienholder must have to prove "legal entitlement to possession of the vehicle:"

(i) Notice of Repossession;

3

(ii) Certified copy of the original title, or a copy affirmed to be a true copy by the records custodian in the affidavit referred to in section (iv) below;

(iii) Authorization for the party's agent to claim the vehicle; and

(iv) Satisfactory proof of a lienholders or lessor's right to immediate possession of a vehicle under the relevant documents with the lessee/borrower.  An affidavit from an appropriate custodian of records of the lienholder or lessor stating the reasons the lienholder or lessor has a current right to take possession of the vehicle (i.e. non-payment under the lease or contract, non-monetary default under the lease or contract, etc.), which shall attach the lease or contract document, and which affidavit shall contain an acknowledgement that the County has the right to rely on the representations contained therein, shall be satisfactory proof of such immediate possessory right.

(*Id.* at 4.)  In addition, the lienholder must release the defendant and the tow operator from liability by signing:

An agreement to release the County and the tow operator/tow yard for its conduct in towing the vehicle, and as to the County only, to release any other claims that may exist between the lienholder/lessor and the County.

(*Id.*)  Finally, the policy describes the fees for which lienholders might be responsible:

Lienholders and lessors will not be responsible for payment of the underlying traffic and/or parking violation fines. The lienholders and lessors may or may not be responsible for towing and storage fees paid to third parties pursuant to New York Lien Law § 184, on which the County takes no position but for which the County shall not refuse to authorize release of the vehicle.  Lienholders and lessors will be provided a breakdown of such fees upon contacting TPVA.

(*Id.* at 5.)

The defendant's "Boot and Tow policy for collecting traffic and/or parking tickets does not include obtaining a warrant or a Court Order."  (*Id.* ¶ 33.)  Nor does it afford "a hearing before a neutral decision maker at any time relative to the propriety of the towing of a vehicle under that policy," "the propriety of [the defendant] allowing a private entity to assert a lien

4

against a vehicle towed under that policy" or the "demand for a release of liability as a condition for release of a vehicle that has been towed under that policy."[4]  (*Id.* ¶¶ 34-35.)

On September 25, 2018, non-party Melissa Jenkins purchased a 2016 Nissan Rogue.  (Pl. 56.1 ¶ 5.)  She financed the purchase of the car, and the retail installment contract was assigned to the plaintiff.  (*Id.*)  As of about October 17, 2018, the plaintiff held a lien on the vehicle, and Ms. Jenkins's monthly payment pursuant to the security agreement was $402.14  (*Id.* ¶¶ 7, 8.)  As of about June 6, 2019, Ms. Jenkins was in default under the contract and did not cure the default.  (*Id.* ¶ 9.)

Between 2014 and 2017, Ms. Jenkins was issued seven notices of liability for red light camera violations, seven of which were delinquent as of January 15, 2020.  (Def. 56.1 ¶ 1.)  Three of these notices were issued to the Nissan Rogue (ECF No. 32-8 at 11; ECF No. 32-4 at 3-30), and four were issued to two other vehicles.  (ECF No. 32-4 at 31-59.)  The defendant says that it notified Ms. Jenkins that the vehicle could be booted if she did not resolve the notices of liability.  (Def 56.1 ¶ 2.)[5]  On January 15, 2020, Paylock booted the vehicle, which was parked in a public lot that the defendant owned, because of the outstanding notices of liability.[6]  (*Id.* ¶¶ 3, 4; ECF No. 30-14 at 4; ECF No. 30-17 at 2.)  On January 15 or January 16, the defendant

---

[4] The defendant does not dispute the plaintiff's characterization of the policy.  (Def. 56.1 ¶¶ 33-35.)

[5] The defendant submitted the notices of liability that it mailed to Ms. Jenkins, but did not submit any evidence that Ms. Jenkins actually received the notices.

[6] The defendant also asserts that the vehicle was booted because it was "abandoned."  (ECF No. 32-8 at 12 (stating that "towing and clearing abandoned vehicles from public and private property is part of the recognized 'community care taking function' of the police").)  The defendant did not include this reason in its answers to interrogatories.  There, the defendant stated that "notices of violation and or liability [] formed the factual basis for the immobilization and towing of the Subject Vehicle pursuant to the Nassau County Administrative Code Title J, Section 120.2 and the [Boot and Tow Policy]."  (ECF No. 30-14 at 4.)  There is, moreover, no support in the record for the claim that the car was abandoned.

notified Ms. Jenkins by telephone that the vehicle had been booted, and told her how much she owed on the outstanding tickets.  (Def. 56.1 ¶ 3; ECF No. 32-2 at 2.)

On January 17, 2020, C&R Automotive towed the car to its tow yard pursuant to the defendant's Boot and Tow Policy.  (Pl. 56.1 ¶ 44.)  In a January 21, 2020 letter to Ms. Jenkins, the defendant advised her that the vehicle had been booted and towed to C&R Automotive's yard because of "outstanding parking violations, notices of liability issued pursuant to any law authorizing photo or digital enforcement of the vehicle and traffic law or any local law."  The defendant advised her that she could "obtain release of the vehicle upon payment of the outstanding fines plus any charges incurred in the immobilization or removal of such vehicle," and that "storage fees will continue to accrue until the date the vehicle is reclaimed or disposed of."  (ECF No. 32-5 at 2.)

In a letter sent to the plaintiff on the same day, the defendant stated that the plaintiff could arrange for the car's release if Ms. Jenkins did not retrieve it, and listed the documentation necessary for release, including an agreement to release any claims against the defendant and C&R Automotive.  (ECF No. 30-6.)  Finally, the defendant explained that "[a]lthough lienholders and lessors will not be responsible for payment of the underlying notice of liability and/or parking violation fines, they may be responsible for towing and storage fees pursuant to New York Lien Law § 184."  (*Id.*)

In a February 25, 2020 letter to the plaintiff, the defendant advised the plaintiff that:

> [The vehicle] is incurring storage fees at a designated impound yard for the County. If you do not respond to this letter within ten (10) days, the county and the designated impound yard will pursue all rights and remedies under the Lien Law of the State of New York.  Please note that storage fees will continue to accrue until the date the vehicle is reclaimed or disposed of.

(ECF No. 30-7; Pl. 56.1 ¶ 52.)

C&R Automotive charged the plaintiff approximately $130 for towing and $25 a day for storage.  On April 3, 2020, C&R Automotive recorded a lien against the vehicle for $2,235.68. (Pl. 56.1 ¶¶ 54-55; *see also* ECF No. 30-22 at 3-4.)[7]  In April 2020, C&R sent the plaintiff a notice of lien and sale of the vehicle to enforce its lien.  (*Id.* ¶ 59.)  The plaintiff did not agree to the conditions for release of the vehicle.  (*Id.* ¶ 57.)

On October 6, 2020, the plaintiff commenced this action, asserting claims pursuant to 42 U.S.C. § 1983 and alleging that the defendant's policy and its enforcement constituted a deprivation of property without due process and an unreasonable seizure under federal and state law ("Count I").  (ECF No. 1 ¶¶ 48-73.)  It also claimed that the defendant's policy and its enforcement violated the New York state constitution, Article I, §§ 6 and 12 ("Count II").  (*Id.* ¶¶ 74-75.)  The plaintiff sought declaratory relief, including "[a] declaration that the conduct of [the defendant], C&R and Michael Schmeltzer as directed above, violates" the Constitution.[8] (*Id.* ¶ 80.)

C&R Automotive released the vehicle to the plaintiff on April 20, 2021, approximately 16 months after it was towed.  C&R Automotive did not require that the plaintiff pay any fees. (Pl. 56.1 ¶ 60.)

On December 6, 2021, the plaintiff moved for summary judgment on Counts I and III. (ECF No. 30.)  The defendant cross-moved for summary judgment, seeking dismissal of the complaint on February 2, 2022.  (ECF No. 32.)  I held oral argument on June 14, 2022.

---

[7] The notice of lien is not part of the record.  The only evidence of the notice is a letter from plaintiff's previous counsel to C&R Automotive, challenging the legality of the lien and scheduled sale of the vehicle.  (ECF No. 30-22.)  A notice of lien form is attached to that letter.  (*Id.*)

[8] As noted above, the plaintiff also asserted claims against C&R Automotive and Michael Schmeltzer for replevin and pursuant to New York State General Obligations Law 349 ("Counts IV and V") (*id.* ¶¶ 83-94), but those parties stipulated to dismissal.

**LEGAL STANDARD**

Summary judgment is appropriate if the parties' submissions—including pleadings, deposition transcripts, affidavits and other documents in the record—show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant has the burden of showing that there are no genuine disputes of material fact. *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252. Moreover, the nonmoving party must do more than point to "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). He must instead identify the "specific facts" that demonstrate a genuine issue for trial, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and "offer some hard evidence showing that its version of events is not wholly fanciful," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). If the nonmoving party's "evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Liberty Lobby*, 477 U.S. at 249-50 (citation omitted).

**DISCUSSION**

The plaintiff moves for summary judgment on Count I for liability and damages on its claim that the defendant's Boot and Tow Policy violated the Fourth and Fourteenth

Amendments.  It also moves for summary judgment on Count III for declaratory relief, "declaring unconstitutional the policy of (a) not obtaining a warrant or judicial order before the seizure of a vehicle on the basis the vehicle's owner is liable for parking or traffic tickets; (b) not providing for any hearing (to lienholders) before or after a seizure, and (c) compensating C&R [Automotive] by grant of a lien which allegedly supplants a pre-existing lienholder's priority without a hearing."  (ECF No. 30-1 at 33.)  In cross-moving for summary judgment, the defendant maintains that the Boot and Tow Policy gives the plaintiff due process, and that any deprivation of the plaintiff's property interest is the result of state law, not the defendant's administrative code or the Boot and Tow Policy.  (ECF No. 32-8 at 10-14.)  The defendant also argues that the plaintiff is not entitled to summary judgment on damages.  (*Id.* at 18-19.)

As the Honorable Valerie E. Caproni did in *Harrell v. City of New York*, 138 F. Supp. 3d 479, 487 (S.D.N.Y. 2015), I begin with a brief observation about what is not at issue in this case. The defendant seizes vehicles under its Boot and Tow Policy for alleged civil, not criminal, violations.  Accordingly, the vehicles are not subject to civil forfeiture, as they might be when the owners are arrested, so the defendant does not retain the cars for that purpose.  *Cf. Krimstock v. Kelly*, 306 F.3d 40 (2d Cir.2002) (establishing what is now known as a "*Krimstock* hearing," setting forth the minimum process that is due when the government seizes forfeitable vehicles from drivers arrested for driving while intoxicated, and of which the government wishes to maintain possession pending the outcome of the criminal proceedings), *cert. denied*, 539 U.S. 969 (2003).  And, because the defendant does not seize a vehicle based upon probable cause to believe that it was used in a crime, the defendant does not retain it to preserve evidence for trial. *Cf. Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 188 (2d Cir. 2007) (Under *Krimstock* and its progeny, the "City can justify the continued retention of a seized vehicle,

either because it is likely to prevail in the eventual forfeiture action or because it wishes to retain the vehicle as evidence against the owner or driver.").  The defendant acknowledges these distinctions.  (ECF No. 32-8 at 11 ("[T]his is not a case which is governed by [*Krimstock*] and its progeny.").)  Moreover, unlike the laws at issue in *Krimstock* and *Harrell*, the administrative code's broad definition of "scofflaw vehicle" authorizes the defendant to boot and tow any vehicle, even if it was not involved in the underlying violation.[9]  Nassau Cnty. Admin. Code § 8-120.1.

In short, the administrative code and the defendant's Boot and Tow Policy permit the defendant to seize private property summarily, and allow its contractor to assign liens against that property, without any adjudication of liability on the underlying traffic or parking violations, and without establishing a property interest in the vehicle, simply to ensure that vehicle owners pay fines for traffic violations which might be adjudicated against the owners.  *See Harrell*, 138 F. Supp. 3d at 487.

## I. The Defendant's Boot and Tow Policy Violated the Plaintiff's Right to Due Process

"When property is seized for the purpose of asserting ownership and control over the property, and not just to preserve evidence of wrongdoing, the seizure implicates two explicit textual sources of constitutional protection: the Fourth Amendment protection against unreasonable warrantless seizures and the Due Process Clause of the Fourteenth Amendment." *Harrell*, 138 F. Supp. 3d at 492 (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50, 52 (1993)).

---

[9] The defendant issued three notices of liability for the Nissan Rogue, but also considered four notices issued to other vehicles in concluding that the Nissan Rogue was a "scofflaw vehicle."  (ECF No. 30-14 at 4.)

The plaintiff alleges that the defendant violated its Fourth Amendment rights because it seized the car without probable cause, a warrant or a valid exception to the warrant requirement, and then held the car.  (ECF No. 1 ¶¶ 55, 56.)  The plaintiff also claims that the defendant violated its right to due process by booting and towing the vehicle without giving notice or an opportunity for a pre- or post-deprivation hearing, by executing a lien on the vehicle, and by attaching conditions to the vehicle's release, including a requirement that the plaintiff release the defendant and C&R Automotive from any claims.  (ECF No. ¶¶ 51-53.)

In *Harrell v. City of New York*, Judge Caproni held that New York City's policy of towing vehicles that were unlawfully operated for hire violated the plaintiffs' rights under the Fourth Amendment.  *See* 138 F. Supp. 3d at 492.  But the plaintiffs in that case were the title owners, who had obvious present possessory interests in the vehicles, and thus clear Fourth Amendment claims.  *Id.* at 484.  Here, the plaintiff is a lienholder, not the registered owner.  "It is settled law that '[a] "seizure" of property occurs when there is some meaningful interference with an individual's possessory interest in that property.'"  *Id.* at 488 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  The plaintiff does not have a present possessory interest in the vehicle simply because it is a lienholder.  *See Santander Consumer USA, Inc. v. County of Suffolk*, No. 20-CV-2656, 2021 WL 4480574, at *6 (E.D.N.Y. Sept. 30, 2021) (*Santander v. Suffolk*) ("To that end, 'it must be emphasized that unlike' titled vehicle owners, Plaintiff, as 'the innocent lienholder, does not have a present possessory right' to the seized vehicles." (emphasis omitted) (quoting *Prop. Clerk v. Leon*, 960 N.Y.S.2d 341 (N.Y. Sup. Ct. 2010)) (collecting cases).

The plaintiff argues that "[a]t the time of the seizure, [its] lien had already ripened into a present possessory right by virtue of a default . . . under the terms of the contract and security

agreement held by [the plaintiff]."  (ECF No. 30-1 at 9 (citing Pl. 56.1 ¶ 9).)  The defendant

acknowledges the default, but contends that the plaintiff did not have a present possessory

interest in the vehicle because it was "not the owner of the Vehicle at the time of the

immobilization," and "had not repossessed the Vehicle."  (ECF No. 32-8 at 16-17.)  The parties

do not cite any case law addressing the extent to which a lienholder whose present possessory

interest results from default has a Fourth Amendment right.  At oral argument, the plaintiff took

the position that I could decide the due process claim without reaching the Fourth Amendment

question.

Accordingly, I address the due process claim first.  The Due Process Clause of the

Fourteenth Amendment provides: "No state shall . . . deprive any person of . . . property without

due process of law."  U.S. Const. amend. XIV § 1.  "The 'general rule' derived from the Due

Process Clause is 'that individuals must receive notice and opportunity to be heard before the

Government deprives them of property.'"[10]  *Harrell*, 138 F. Supp. 3d at 492 (quoting *James*

*Daniel Good Real Prop.*, 510 U.S. at 48).

The plaintiff challenges the Boot and Tow Policy because it permits the defendant and its

agents to seize a vehicle, assign a lien without prior notice or a hearing and attach conditions to

the car's release.  These challenges touch on two separate property interests.  Immobilizing and

---

[10] "Of course, it does not violate the Due Process Clause to immediately seize property when an exception
to the Fourth Amendment's warrant requirement applies." *Harrell*, 138 F. Supp. 3d at 492-93.  But the
defendant has not identified a valid exception to the warrant requirement.  Citing *Tate v. District of
Columbia*, 627 F.3d 904 (2010), the defendant says that "immobilizing a vehicle based on failure to
pay parking or traffic violations has been recognized" as an exception to the warrant requirement.  (ECF
No. 32-8 at 21.)  Not only is *Tate* not binding in this circuit, district courts in this circuit have reached
contrary conclusions.  *See Harrell*, 138 F. Supp. 3d at 491; *see also DeCastro v. City of New York*, 278
F. Supp. 3d 753, 770 (S.D.N.Y. 2017).  The defendant also argues that "removing an owner-abandoned
vehicle from a public parking lot . . . is governed by the exception to the warrant requirement of the
public caretaking function of the County."  (ECF No. 32-8 at 17.)  As discussed above, nothing in the
record suggests that the car was abandoned.  Indeed, the defendant acknowledges that it booted the
vehicle because of the outstanding notices of liability.  (ECF No. 30-14 at 4.)

towing the car interfered with the property interests of anyone with a present possessory interest in the car.  Thus, Ms. Jenkins, the registered owner with a present possessory interest in the car when it was booted and towed, could potentially assert a due process claim challenging the constitutionality of the defendant's pre-seizure policies.  *See Harrell*, 138 F. Supp. 3d at 493 (finding that where the city's policy was unconstitutional under the Fourth Amendment, "it follow[ed] that the rule that postpone[d] notice to the owner and an opportunity to be heard until after seizure also violate[d] the Due Process Clause").  If the plaintiff did not have a present possessory interest in the car—a point I assume without deciding—it cannot complain that the defendant booted and towed the car without first holding a hearing.  *See Santander v. Suffolk*, 2021 WL 4480574, at *6 (finding that the lienholder plaintiff could not state a procedural due process claim against a county's vehicle seizure policy because it did not have a present possessory right to the seized vehicles).

On the other hand, a lienholder like the plaintiff can challenge the defendant's policy of permitting the towing company to retain the car unless certain conditions are met and to assert a lien against the vehicle.  "[A] security interest is indisputably a property interest protected by the Fourteenth Amendment."  *Ford Motor Credit Co.*, 503 F.3d at 191 (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983)); *see also Am. Honda Fin. Corp. v. Twp. of Aston*, 546 F. Supp. 3d 371, 379 (E.D. Pa. 2021) (finding that the plaintiff's "lien over the [vehicle] was a protected property interest").  "A secured creditor has two rights: the *contractual* right to repayment of the debt owed and the *property* right to the collateral that secures the debt in the event of non-payment."  *Id.* (emphasis in original) (citing *Armstrong v. United States*, 364 U.S. 40, 46 (1960)).

"Temporary deprivations in the form of liens require due process protections." *HVT, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-CV-5867, 2018 WL 3134414, at *7 (E.D.N.Y. Feb. 15, 2018) (citing *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991)), *report and recommendation adopted*, No. 15-CV-5867, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018); *see also Doehr*, 501 U.S. at 12 ("Without doubt, state procedures for creating and enforcing attachments, as with liens, 'are subject to the strictures of due process.'" (quoting *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 85 (1988))). "Thus, the attachment of a lien constitutes a deprivation of property as well, even if it is only temporary." *Id.*; *see also Santander v. Suffolk*, 2021 WL 4480574, at *7 (finding that the plaintiff plausibly alleged that the "County has a policy and procedure of depriving Plaintiff of its property without a meaningful opportunity to challenge the imposition of possessory liens on the Subject Vehicles").

Moreover, delays and conditions for release can interfere with a lienholder's property interest in collateral and its ability to enforce a lien. *See Ford Motor Credit Co.*, 503 F.3d at 191 ("[W]hile Ford Motor Credit may (conceivably) protect its *contractual* right to repayment by seeking ninety percent of the proceeds from a vehicle's sale, the City's delays impair Ford Motor Credit's *property* right, which is in the collateral itself—the seized vehicle." (emphasis in original)); *see also Santander v. Suffolk*, 2021 WL 4480574, at *13 (finding that the county's policy of "indefinitely detaining Subject Vehicles and requiring conditions of payment and/or general releases after the forfeiture court ordered a Subject Vehicle's return" violated the lienholder's constitutional rights). "When the state delays resolution of a claim, the claim holder's Fourteenth Amendment rights may be implicated, at least if the claim holder is not in equal part responsible for the delay." *Ford Motor Credit Co.*, 503 F.3d at 192 ("[N]ot only is the present value of the claim diminished by the indeterminacy of its eventual realization, but Ford

Motor Credit's property interest in the underlying asset suffers, as the vehicle depreciates over time.").

C&R Automotive conditioned the car's release on the plaintiff's release of claims against it and the defendant, and it asserted a lien against the car; both impaired the plaintiff's property interest.  Thus, the question is whether the defendant afforded the plaintiff due process.

"Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'"  *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (alterations in original) (quoting *Brody v. Vill. of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005)).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Id.* (citation omitted).  Courts analyze procedural due process claims under the Supreme Court's three-factor balancing test in *Mathews v. Eldridge*.  424 U.S. 319, 333 (1976).  A court applying the *Mathews* test weighs "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; and (3) the government's interest, including the possible burdens of alternative procedures."  *Kuck v. Danaher*, 600 F.3d 159, 163 (2d Cir. 2010) (alteration, citation and quotation marks omitted).  "*Mathews* is the test for both when a hearing is required (i.e., pre- or post-deprivation) and what kind of procedure is due."  *Nnebe*, 644 F.3d at 159 (alteration omitted) (quoting *Brody*, 434 F.3d at 134).  "The 'general rule' is that a pre-deprivation hearing is required, but the *Mathews* inquiry '"provides guidance" in determining whether to "tolerate" an exception to the rule requiring pre-deprivation notice and hearing.'"  *Id.* (quoting *Krimstock*, 306 F.3d at 60).  "It is not a test for whether any hearing whatsoever is due."  *HVT, Inc.*, 2018 WL 3134414, at *8 (citing *Mathews*, 424 U.S. at 333); *see also Mathews*, 424

15

U.S. at 333 (The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest.").

The defendant contends that the Boot and Tow Policy provides due process because it "sets forth a straightforward mechanism for prompt notice to a lienholder when a secured vehicle has been towed and a simple procedure by which a lienholder can demonstrate to [the] TPVA its right to possession of a vehicle which was not recovered by the vehicle's registered owner . . . ." (ECF No. 32-8 at 10.)  But it is the "simple procedure" that effects the deprivation, at least in part.  The Boot and Tow Policy allows the defendant or its contractor to attach conditions to the release of a towed vehicle and assert a lien against it—a vehicle in which neither has any interest—without any opportunity for a hearing before or after the deprivation.  *See* Nassau Cnty. Admin. Code § 8-120.2(f) ("All sums due for delinquent parking tickets and all fees for immobilization or removal shall be a lien on any vehicle so immobilized or removed."); (ECF No. 30-16 at 4 ("The lienholders and lessors may or may not be responsible for towing and storage fees paid to third parties . . . ."); *id.* at 3 (requiring that a lienholder submit an "agreement to release the County and the tow operator/tow yard for its conduct in towing the vehicle, and as to the County only, to release any other claims that may exist between the lienholder/lessor and the County").)

In this case, C&R Automotive—the defendant's agent—would not release the car unless the plaintiff agreed to release claims against it and the defendant.  (ECF No. 30-6 at 3.) Moreover, C&R asserted a $2,235.68 lien against the car for the cost of towing and storage.  The defendant appears to acknowledge that the plaintiff would have to pay towing and storage fees, and that the vehicle would be encumbered by C&R Automotive's lien, even if the plaintiff had followed all of the instructions outlined in the defendant's January 21, 2020 letter.  (ECF No. 32-

8 at 11 (The "plaintiff had the ability to retrieve the Vehicle within days of the time that it was towed, without obligation to the County for any fines or penalties for which the Vehicle owner was liable and with minimal impact to the value of the Vehicle and, consequently, no material impact on plaintiff's security interest.").)  Thus, the defendant appears to agree that it does not give a lienholder the opportunity to contest the conditions of release or the towing company's assertion of a lien.  This affords the plaintiff no process, let alone due process.  *See HVT, Inc.*, 2018 WL 3134414, at *8 ("[T]he Court need not examine this case under the *Mathews* factors as the question presented is not whether Plaintiff should have had an opportunity for a pre-deprivation hearing versus a post-deprivation hearing.  Rather, the question is whether Defendant can summarily deprive Plaintiff of its property without any opportunity for a hearing.  The law is quite clear that it cannot.").  I nevertheless consider the *Mathews* factors in turn.

First, the interest at stake—the plaintiff's lien interest in the present value of the vehicle—is significant.  *See Ford Motor Credit Co.*, 503 F.3d at 194 (holding that in the context of the *Mathews* test, the lienholder's "interest in the present value of a seized vehicle, while not as great as the interest of the vehicle's owner in possession of a seized vehicle . . . [was] still considerable"); *see also Aston*, 546 F. Supp. 3d at 380 (same); *Am. Honda Fin. Corp. v. City of Revere*, 471 F. Supp. 3d 399, 407 (D. Mass. 2020) ("[L]ienholders and similarly interested parties have an equally valid interest in protecting their stake in the property.").

The second *Mathews* factor—the risk of erroneous deprivation—also favors the plaintiff. The defendant says that it "has not sought to [] take ownership of the Vehicle, keep the Vehicle for evidence or reap the benefit of the proceeds of a sale of the Vehicle," and that the policy "gives the secured creditor notice and an opportunity to gain possession of the vehicle provided that the vehicle's owner does not . . . retrieve the vehicle."  (ECF No. 32-8 at 11.)  These

arguments are not persuasive.  While it is true that the defendant does not itself take the vehicle or "reap the benefit of the proceeds of a sale of the vehicle," C&R Automotive—to which the defendant delegated towing and storing—does all of those things.  It is the defendant's administrative code that enabled C&R Automotive to place a lien on the car and to cover the cost of towing and storing it.  Nassau Cnty. Admin. Code § 8-120.2(f).  Moreover, again enabled by the Boot and Tow Policy, C&R Automotive conditions the release of the car on the lienholder's release of claims against not only C&R but also against the defendant.  (ECF No. 30-16 at 3.)  The risk of erroneous deprivation—for example if the vehicle was towed and stored illegally—is obvious.  *See Harrell*, 138 F. Supp. 3d at 494 (finding that the risk of erroneous deprivation was high because an officer's probable cause determination was not enough to justify the initial seizure of a vehicle).  The car was not parked illegally, abandoned or used to commit a crime.  Moreover, as the defendant conceded at oral argument, there were no dispositions or final judgments on the violations.  Under these circumstances, the risk that the Boot and Tow Policy erroneously deprives lienholders of their property interest in a towed vehicle is high, and this *Mathews* factor weighs in favor of a pre-deprivation hearing.[11]

The third *Mathews* factor—the government's interest, including the possible burdens of alternative procedures—also weighs in the plaintiff's favor.  The defendant argues that its interest is "substantial;" emphasizing that it issued seven liability notices to Ms. Jenkins, the defendant claims that its "interest in the Boot and Tow program is in enforcing the important

---

[11] The title owner, Ms. Jenkins, has not asserted a Fourth Amendment claim, nor is she a party to this case.  Moreover, because I decide this case on due process grounds, I do not address the extent to which the plaintiff had a present possessory interest in the car.  However, as I discuss above to evaluate the second *Mathews* factor, the Boot and Tow Policy violates the Fourth Amendment rights of those who have a present possessory interest in a booted or towed car by permitting the defendant and its agents to seize the car without a warrant or a valid exception to the warrant requirement, impound it, and attach conditions to its release, including the payment of towing and storage fees and the release of claims against the defendant and its agents.

public safety goals that underly the red-light camera program against persons that meet the definition of scofflaws."  (ECF No. 32-8 at 12.)  In addition, the defendant claims that "[t]he abandonment of the Vehicle required that it be towed to a secure location from the public parking lot where it was located."  Neither concern justifies the policy.  First, the defendant does not address the deprivations at issue, which are C&R Automotive's attachment of conditions to the car's release and its assertion of a lien pursuant to the Boot and Tow Policy, or explain how permitting the Nassau County Police Department or its private contractor to seize a car and assert a lien without a hearing supports a government interest.  Indeed, as discussed at oral argument, the defendant did not even adjudicate the tickets or reduce them to judgments, and only three of the tickets were issued to the towed vehicle.[12]  (ECF No. 32-8 at 11.)

Moreover, as discussed above, the defendant's abandonment argument is refuted by the record, and conflicts with the defendant's stated reason for booting and towing the vehicle.[13]  *See supra* note 6; (ECF No. 30-14 at 4.)  In short, "there is no legitimate government interest in seizing a vehicle because its owner *might* have violated a local law," *Harrell*, 138 F. Supp. 3d at 494 (emphasis in original), and the defendant has no interest in having its police department or

---

[12] At oral argument, in response to my question about whether the defendant could adopt a program that might comport with due process, the plaintiff suggested that the defendant could adjudicate the tickets, reduce them to judgments and then levy appropriate liens; according to the plaintiff, this is the approach that New York City takes.  The plaintiff also said that the defendant "could tell lienholders like [the plaintiff] when that's happening, just like a judgment creditor would, and treat [the plaintiff] like a co-creditor in the property."

[13] The defendant states that "Ms. Jenkins . . . clearly was not motivated to pay the outstanding Notices of Liability and abandoned the Vehicle rather than exercise any of the remedies that were available to her under the Administrative Code and the Boot and Tow Policy."  (ECF No. 32-8 at 12.)  The defendant also claims that the plaintiff "[p]resumably . . . could have exercised its rights to repossession of the Vehicle from Ms. Jenkins at any time during the more than seven months between the time that Ms. Jenkins defaulted under the security agreement and the time that the car was immobilized, but it did not do so."  (*Id.*)  The defendant cites no authority to support the propositions that a vehicle is abandoned under New York law if the owner does not pay traffic tickets, or if a lienholder does not promptly exercise its right to repossession.

contractor assert a lien to cover the costs of towing and storing a vehicle that has been unlawfully

seized, or attach conditions to its release.  As Judge Caproni observed in connection with New

York City's vehicle seizure policy:

> There is no question that regulating vehicles that operate for-hire is a legitimate
> exercise of police power.  But summary deprivation of property is not.  The City
> has powerful, legitimate tools at its disposal. It could subject these vehicles to
> forfeiture; it could suspend the driver's licenses of owners or operators of
> unlicensed vehicles for hire; it could impose substantial late fees for owners who
> do not pay the fines that have legitimately been imposed.  What it cannot do,
> consistent with the Fourth Amendment, is summarily seize property to deter future
> violations from an *alleged* violator and hold the property as leverage to ensure
> payment of a penalty—*if* the violator is found guilty when the allegations against
> him are adjudicated.

*Harrell*, 138 F. Supp. 3d at 492 (emphasis in original).

The same is true here.  The defendant could also take legitimate steps to deter scofflaws,

including suspending their licenses, imposing late fees or subjecting their cars to forfeiture.  But

the measures at issue here—which are also directed at innocent third party lienholders—do not

withstand constitutional scrutiny.  The defendant's Boot and Tow Policy violates the Due

Process Clause because it authorizes the Nassau County Police Department or its contractor to

deprive lienholders of their property interest in a vehicle without any opportunity for a hearing—

either before or after the assertion of a lien—and the *Mathews* factors weigh in favor of a pre-

deprivation hearing.  *Harrell*, 138 F. Supp. 3d at 494-95 ("Whatever the due process clause may

mean in more complicated scenarios, surely it means the government cannot summarily seize

property because a fine *might* be imposed at some point in the future by a neutral judicial

officer." (emphasis in original)).  Because I conclude that the defendant violated the plaintiff's

due process rights, I do not decide whether the Boot and Tow Policy violates the plaintiff's

Fourth Amendment rights.  Summary judgment in favor of the plaintiff is granted on Count I

with respect to the plaintiff's due process claim.

## II.      Municipal Liability

C&R Automotive, which is no longer a defendant in this case, asserted the lien against the vehicle, which deprived plaintiff of its property interest without due process.  However, the defendant has municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).  As explained above, the plaintiff has alleged that the defendant's official, codified municipal policy caused the constitutional deprivation, and the defendant concedes that the details of the policy are as the plaintiff describes.  Nor is there any question of fact that the policy and practices of implementing the policy violated the plaintiff's right to due process under the Fourteenth Amendment.  Accordingly, the defendant is liable under *Monell* for whatever damages the plaintiff can prove.

Addressing only the lien aspect of the policy, the defendant argues that "New York State [Lien Law §184] and not County policy or practice [] determines the relative lien priority in this situation."[14]  (ECF No. 32-8 at 15.)  As an initial matter, this is not an answer to the other aspects of the defendant's policy.  In any event, this argument is not persuasive.  The Nassau County Police Department and TVPA developed the Boot and Tow Policy "to effectuate the purposes and provisions of" Administrative Code § 8-120, which is entitled "Immobilization and Removal of Illegally Parked Vehicles and Vehicles of Scofflaw."  Nassau Cnty. Admin. Code § 8-120.5. While the policy purports to assert liens on vehicles "pursuant to New York Lien Law § 184," the text of the administrative code and the way that the defendant applied the policy demonstrate that a contractor like C&R Automotive asserts a lien pursuant to the defendant's administrative code and the policy, not New York Lien Law § 184.

---

[14] The defendant does not make a similar argument about the policy of conditioning release of a vehicle on a lienholder's release of claims against C&R Automotive and the defendant.

A comparison of the policy and the lien law makes the point.  New York Lien Law § 184 provides that "where an entity seeks to assert a lien for the storage of a motor vehicle that it has towed and stored at the direction of a law enforcement agency, such entity must 'mail by certified mail, return receipt requested, a notice . . . to every person who has perfected a security interest in such motor vehicle or who is listed as a lienholder upon the certificate of title . . . within [20] days of the first day of storage.'"  *AMT Cap. Holdings, S.A. v. Sun Life Assurance Co. of Can.*, 161 A.D.3d 1423, 1425 (3rd Dep't 2018) (alterations in original) (quoting N.Y. Lien L. § 184).  The "notice shall include the name of the [entity] providing storage of the motor vehicle, the amount being claimed for such storage, and [the] address and times at which the motor vehicle may be recovered," and "shall also state that the [entity] providing such notice claims a lien on the motor vehicle and that such motor vehicle shall be released upon full payment of all storage charges accrued on the date the motor vehicle is released."  N.Y. Lien L. § 184.  New York courts have held that deficient notices of lien are invalid.  *See AMT Cap. Holdings*, 161 A.D.3d at 1425-26 (holding that a notice of lien was deficient because "[f]atally . . . the notice did not state, as required, that respondent 'claimed a lien' on the vehicle" (alteration omitted)).  The law also requires that the storing entity send the notice within 20 days of the first day of storage.  "A person who fails to mail such notice within such twenty day period shall only be entitled to a lien for the amount payable for storage from and after the date the notice was mailed."  N.Y. Lien L. § 184.

In contrast, the Nassau County Administrative Code authorizes the police department or its contractor to assert a lien on a vehicle 15 days after booting or towing it.  Nassau Cnty. Admin. Code § 8-120.2(f) ("On or after the fifteenth business day following the immobilization or removal of a vehicle pursuant to this title, such vehicle shall be subject to levy upon execution

of a judgment."). The policy requires that written notice be sent to titled owners and lienholders within two days of the vehicle's towing, and lists the elements those notices must include. (ECF No. 30-16 at 2-3.) Presumably because the initial notice must be sent at least 13 days before the attachment of the lien, the Boot and Tow Policy does not require that the initial notice to the lienholder state that the contractor claims a lien.

In support of its argument that New York state law, not county policy, caused C&R Automotive to assert a lien against the vehicle, the defendant claims that the towing company "provided [the] plaintiff with the notice required under New York State Lien Law §184." (ECF No. 32-8 at 15.) It did not. The January 21, 2020 notice that the defendant sent to the plaintiff included almost none of the requirements of New York Lien Law § 184. On April 3, 2020, C&R Automotive recorded a lien against the vehicle for $2,235.68. (Pl. 56.1 ¶¶ 54-55; *see also* ECF No. 30-22 at 3-4.) The notice of lien in the record does not include all of the elements required under section 184, including a statement that the vehicle would be released upon full payment of all storage charges. Moreover, although the notice appears to have been sent more than 20 days after the first day of storage, the lien for $2,235.68 reflects the cost of storage from the date that C&R Automotive towed the vehicle, not when the notice was sent. (ECF No. 30-22 at 4.)

In short, the defendant's claim that state law, not county law and policies, governs the process by which the police department or its contractor asserts a lien against a towed vehicle is unavailing. The defendant's administrative code expressly provides for the attachment of a lien fifteen days after a vehicle is towed, and does not comport with New York Lien Law § 184. Moreover, the record supports the finding that C&R Automotive asserted the lien pursuant to the defendant's administrative code and Boot and Tow Policy, not state law. *See HVT, Inc.*, 2018

WL 3134414, at *12 ("[R]ather than assessing the New York Lien Law, the Court considers the Defendant's own procedures[.]").

## III.    Declaratory Relief

The plaintiff also seeks declaratory relief in the form of a declaration that the Boot and Tow Policy is unconstitutional because it permits C&R Automotive to assert a lien without a hearing.  "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "In determining whether [to] exercise jurisdiction over an action for declaratory relief, a district court should analyze '(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'"  *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir.2003)).  In addition, courts may also consider "whether there is a better or more effective remedy."  *Dow Jones & Co.*, 346 F.3d at 360.  "[D]ismissal [of a declaratory judgment action] is warranted where . . . the declaratory relief [plaintiff] seeks is duplicative of his other causes of action."  *Kuhns*, 202 F. Supp. 3d at 443 (alterations in original) (quoting *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 563 (S.D.N.Y. 2016)).

In granting summary judgment in the plaintiff's favor on its due process claim, I determined that the defendant violated the plaintiff's constitutional rights by permitting C&R Automotive to attach conditions to the release of the car and to assert a lien against it without an opportunity for a hearing.  This relief is identical to that sought on the declaratory judgment

claim.[15]  Accordingly, Count III is duplicative of Count I, summary judgment is granted in the

defendant's favor, and Count III is dismissed.

## IV.    Damages

The plaintiff moves for summary judgment on damages for the due process violation.

The plaintiff "requests damages of $6,032.10, representing the contract payment of $402.14

multiplied by the approximately 16 months during which time the Vehicle was detained without

[the plaintiff's] consent."  (ECF No. 30-1 at 22.)  The defendant contends that even if the

plaintiff is entitled to damages, it has incorrectly calculated the amount.  (ECF No. 32-8 at 18-

19.)  The defendant is correct.

In *Ford Motor Credit Co.*, the Second Circuit held that a lienholder's property interest in

a seized vehicle was its present value.  503 F.3d at 191 ("Ford Motor Credit has a property

interest in the present value of a seized vehicle."); *see also id.* at 192 ("[N]ot only is the present

value of the claim diminished by the indeterminacy of its eventual realization, but Ford Motor

Credit's property interest in the underlying asset suffers, as the vehicle depreciates over time.").

The plaintiff's claimed damages do not reflect the difference in the vehicle's present value, and

the plaintiff does not claim that the defendant's policy caused Ms. Jenkins to stop making

payments on the loan in June 2019—approximately seven months before Paylock booted the car.

Nor does the plaintiff cite any authority for the proposition that the scheduled payments under a

security agreement is a measure of damages arising from a due process violation.

Citing Kelley Blue Book, the defendant argues that the plaintiff suffered no damages

because of "the post-pandemic inflation of the value of used cars."  (ECF No. 32-8 at 19.)  It

contends that "[b]ased upon plaintiff's failure to come forward with proof of damages based on

---

[15] As with Count I, I do not consider whether the Boot and Tow Policy violates lienholders' Fourth
Amendment rights.

the proper measure of damages pursuant to *Ford Motor Co.*[,] its claim for damages must be denied and summary judgment awarded to the [defendant]." (*Id.*) But this is a summary judgment motion, not a final adjudication. Because there is a factual dispute about damages, there is a triable issue.

Accordingly, summary judgment is denied on the issue of damages to which the plaintiff is entitled on the due process violation. The plaintiff may, however, request an inquest to establish damages.

## CONCLUSION

For these reasons, summary judgment is granted in favor of the plaintiff as to liability on its due process claim in Count I. For Count III, declaratory relief is denied, and Count III is dismissed. Summary judgment is denied with respect to the amount of damages on the due process claim, but the plaintiff may request an inquest to establish damages.

**SO ORDERED.**

                                             s/Ann M. Donnelly
                                        _____
                                        ANN M. DONNELLY
                                        United States District Judge

Dated: Brooklyn, New York
          August 22, 2022